# STATE OF MICHIGAN

# COURT OF APPEALS

GILLETTE COMMERCIAL OPERATIONS
NORTH AMERICA & SUBSIDIARIES,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

FOR PUBLICATION
September 29, 2015
9:00 a.m.

No. 325258
Court of Claims
LC No. 14-000053-MT

---

YASKAWA AMERICA, INC.,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

No. 325475
Court of Claims
LC No. 11-000077-MT

---

RAINIER INVESTMENT MANAGEMENT,
INC.,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

No. 325476
Court of Claims
LC No. 13-000015-MT

---

RAINIER INVESTMENT MANAGEMENT,
INC.,

        Plaintiff-Appellant,

1

v

DEPARTMENT OF TREASURY,

 Defendant-Appellee.

No. 325477
Court of Claims
LC No. 13-000090-MT

---

RAINIER INVESTMENT MANAGEMENT, INC.,

 Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

 Defendant-Appellee.

No. 325478
Court of Claims
LC No. 13-000110-MT

---

RAINIER INVESTMENT MANAGEMENT, INC.,

 Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

 Defendant-Appellee.

No. 325479
Court of Claims
LC No. 12-000032-MT

---

HANSEN BEVERAGE COMPANY,

 Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

 Defendant-Appellee.

No. 325480
Court of Claims
LC No. 11-000080-MT

---

COVENTRY HEALTH CARE, INC.,

 Plaintiff-Appellant,

2

v                                                          No.   325481
                                                           Court of Claims
DEPARTMENT OF TREASURY,                                    LC No.   11-000127-MT

      Defendant-Appellee.

---

YASKAWA AMERICA, INC.,

      Plaintiff-Appellant,

v                                                          No.   325482
                                                           Court of Claims
DEPARTMENT OF TREASURY,                                    LC No.   13-000052-MT

      Defendant-Appellee.

---

YASKAWA AMERICA, INC.,

      Plaintiff-Appellant,

v                                                          No.   325483
                                                           Court of Claims
DEPARTMENT OF TREASURY,                                    LC No.   12-000155-MT

      Defendant-Appellee.

---

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

      Plaintiff-Appellant,

v                                                          No.   325484
                                                           Court of Claims
DEPARTMENT OF TREASURY,                                    LC No.   14-000219-MT

      Defendant-Appellee.

---

PAPERWEIGHT DEVELOPMENT
CORPORATION,

      Plaintiff-Appellant,

v                                                          No.   325485

3

DEPARTMENT OF TREASURY,

     Defendant-Appellee.

Court of Claims
LC No.  12-000160-MT

---

PAPERWEIGHT DEVELOPMENT
CORPORATION,

     Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

     Defendant-Appellee.

No.  325486
Court of Claims
LC No.  12-000075-MT

---

DOLLAR TREE, INC.,

     Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

     Defendant-Appellee.

No.  325487
Court of Claims
LC No.  14-000192-MT

---

BALL CORPORATION,

     Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

     Defendant-Appellee.

No.  325488
Court of Claims
LC No.  13-000123-MT

---

COMMERCIAL METALS COMPANY,

     Plaintiff-Appellant,

v

No.  325489
Court of Claims

4

DEPARTMENT OF TREASURY,

      Defendant-Appellee.

LC No.  12-000161-MT

---

COMMERCIAL METALS COMPANY,

      Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

      Defendant-Appellee.

No.  325490
Court of Claims
LC No.  12-000087-MT

---

DOLLAR TREE, INC.,

      Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

      Defendant-Appellee.

No.  325491
Court of Claims
LC No.  14-000030-MT

---

BIORX, LLC,

      Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

      Defendant-Appellee.

No.  325492
Court of Claims
LC No.  11-000128-MT

---

SONOCO PRODUCTS COMPANY,

      Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

No.  325505
Court of Claims
LC No.  14-000142-MT

Defendant-Appellee.

---

ANHEUSER-BUSCH, LLC,

     Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

     Defendant-Appellee.

No. 325506
Court of Claims
LC No. 13-000111-MT

---

INGRAM MICRO, INC.,

     Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

     Defendant-Appellee.

No. 325507
Court of Claims
LC No. 11-000035-MT

---

RENAISSANCE LEARNING, INC.,

     Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

     Defendant-Appellee.

No. 325508
Court of Claims
LC No. 12-000093-MT

---

RENAISSANCE LEARNING, INC.,

     Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

     Defendant-Appellee.

No. 325509
Court of Claims
LC No. 13-000006-MT

---

AK STEEL HOLDING CORPORATION,

    Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

    Defendant-Appellee.

No. 325510
Court of Claims
LC No. 13-000074-MT

---

ADVANCE/NEW HOUSE PARTNERSHIP,

    Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

    Defendant-Appellee.

No. 325511
Court of Claims
LC No. 14-000067-MT

---

UNITED STATIONERS SUPPLY COMPANY,

    Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

    Defendant-Appellee.

No. 325515
Court of Claims
LC No. 12-000059-MT

---

RODALE, INC.,

    Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

    Defendant-Appellee.

No. 325516
Court of Claims
LC No. 12-000101-MT

CIRCOR ENERGY PRODUCTS, INC.,

       Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

       Defendant-Appellee.

No.  325517
Court of Claims
LC No.  13-000098-MT

---

CROWN HOLDINGS, INC.,

       Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

       Defendant-Appellee.

No.  325518
Court of Claims
LC No.  13-000106-MT

---

MICHELIN CORPORATION,

       Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

       Defendant-Appellee.

No.  325520
Court of Claims
LC No.  14-000217-MT

---

INTERSTATE GAS SUPPLY, INC.,

       Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

       Defendant-Appellee.

No.  325522
Court of Claims
LC No.  14-000144-MT

---

INTERSTATE GAS SUPPLY, INC.,

        Plaintiff-Appellant,

v                                               No.  325523
                                               Court of Claims
DEPARTMENT OF TREASURY,                 LC No.  14-000070-MT

        Defendant-Appellee.

---

SAPA EXTRUSIONS, INC., formerly known as
ALCOA EXTRUSIONS, INC.,

        Plaintiff-Appellant,

v                                               No.  325525
                                               Court of Claims
DEPARTMENT OF TREASURY,                 LC No.  14-000157-MT

        Defendant-Appellee.

---

RAVEN INDUSTRIES, INC.,

        Plaintiff-Appellant,

v                                         No.  325526
                                             Court of Claims
DEPARTMENT OF TREASURY,                   LC No.  14-000037-MT

        Defendant-Appellee.

---

CARGILL, INC.,

        Plaintiff-Appellant,

v                                         No.  325528
                                             Court of Claims
DEPARTMENT OF TREASURY,                   LC No.  12-000113-MT

        Defendant-Appellee.

---

WATTS REGULATOR COMPANY,

     Plaintiff-Appellant,

v                                          No.  325529
                                            Court of Claims

DEPARTMENT OF TREASURY,              LC No.  13-000021-MT

     Defendant-Appellee.

---

WATTS REGULATOR COMPANY,

     Plaintiff-Appellant,

v                                          No.  325532
                                            Court of Claims

DEPARTMENT OF TREASURY,              LC No.  13-000041-MT

     Defendant-Appellee.

---

WATTS REGULATOR COMPANY,

     Plaintiff-Appellant,

v                                          No.  325533
                                            Court of Claims

DEPARTMENT OF TREASURY,                LC No.  14-000010-MT

     Defendant-Appellee.

---

LORD CORPORATION,

     Plaintiff-Appellant,

v                                          No.  325534
                                            Court of Claims

DEPARTMENT OF TREASURY,                LC No.  13-000124-MT

     Defendant-Appellee.

---

TERADYNE, INC.,

        Plaintiff-Appellant,

v                                                              No. 325535
                                                               Court of Claims
DEPARTMENT OF TREASURY,                                        LC No. 12-000063-MT

        Defendant-Appellee.

---

LUBRIZOL CORPORATION,

        Plaintiff-Appellant,

v                                                              No. 325541
                                                               Court of Claims
DEPARTMENT OF TREASURY,                                        LC No. 14-000143-MT

        Defendant-Appellee.

---

GOODYEAR TIRE & RUBBER COMPANY,

        Plaintiff-Appellant,

v                                                              No. 325972
                                                               Court of Claims
DEPARTMENT OF TREASURY,                                        LC No. 14-000024-MT

        Defendant-Appellee.

---

HALLMARK MARKETING COMPANY, LLC,

        Plaintiff-Appellant,

v                                                              No. 325974
                                                               Court of Claims
DEPARTMENT OF TREASURY,                                        LC No. 15-000009-MT

        Defendant-Appellee.

---

BIG LOTS STORES, INC.,

        Plaintiff-Appellant,

v                                      No.  326039
                                             Court of Claims

DEPARTMENT OF TREASURY,          LC No.  13-000133-MT

        Defendant-Appellee.

---

KIMBALL INTERNATIONAL MARKETING, INC.,

        Plaintiff-Appellant,

v                                      No.  326075
                                           Court of Claims

DEPARTMENT OF TREASURY,          LC No.  14-000300-MT

        Defendant-Appellee.

---

NINTENDO OF AMERICA, INC.,

        Plaintiff-Appellant,

v                                        No.  326080
                                         Court of Claims

DEPARTMENT OF TREASURY,          LC No.  14-000253-MT

        Defendant-Appellee.

---

ADVANCE/NEWHOUSE PARTNERSHIP,

        Plaintiff-Appellant,

v                                        No.  326110
                                         Court of Claims

DEPARTMENT OF TREASURY,          LC No.  14-000206-MT

        Defendant-Appellee.

---

FLUOR CORPORATION AND SUBSIDIARIES,

Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee.

No. 326123
Court of Claims
LC No. 14-000292-MT

T-MOBILE USA, INC. AND SUBSIDIARIES,

Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee.

No. 326136
Court of Claims
LC No. 14-000276-MT

Before: MURRAY, P.J., and JANSEN and METER, JJ.

MURRAY, P.J.

## I. INTRODUCTION

In these consolidated appeals, numerous foreign[1] corporations doing business in Michigan appeal as of right the trial court's order granting summary disposition to defendant Michigan Department of Treasury pursuant to MCR 2.116(I)(1), and dismissing their complaints.

These cases involve a significant number of state and federal constitutional challenges to 2014 PA 282, which the Legislature—taking the cue from the Supreme Court in *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642; 852 NW2d 865 (2014) (*IBM*)—enacted to retroactively rescind Michigan's membership in the Multistate Tax Compact, which then precluded foreign corporations from utilizing a three factor apportionment formula previously available under the Compact, MCL 205.581 *et. seq*. In a well-written and well-reasoned opinion, the trial court rejected each of the constitutional challenges. For the reasons expressed below, so do we. Consequently, we affirm the trial court's final order of dismissal.

## II. BACKGROUND FACTS AND PROCEDURAL HISTORY

---

[1] By foreign we mean corporations that were incorporated outside of Michigan, not necessarily outside of the United States.

Rather than re-creating the wheel, we adopt the trial court's recitation of the background facts leading to these lawsuits:

**History of the Compact**

The Compact is an interstate tax agreement that was originally enacted in 1967 by the legislatures of seven states. The Compact was initially drafted out of concerns of state sovereignty in reaction to the introduction of federal legislation that sought to regulate various areas of state taxation.[3] The original purposes of the Compact included:

> (1) facilitating proper determination of state and local tax liability of multistate taxpayers, including the equitable apportionment of tax bases and settlement of apportionment disputes; (2) promoting uniformity and compatibility in state tax systems; (3) facilitating taxpayer convenience and compliance in the filing of tax returns and in other phases of tax administration; and (4) avoiding duplicative taxation. [*US Steel Corp v Multistate Tax Comm*, 434 US 452, 456; 98 S Ct 799; 54 L Ed 2d 682 (1978).[4]]

Michigan adopted the Compact provisions, effective in 1970, through enactment of 1969 PA 343.

**Apportionment Formulas under the Compact and the MBT Act**

The present case, and others like it, concern two alternative methods of apportioning income for purposes of calculating MBT [Michigan business tax]. Under the MBT Act, created by 2007 PA 36,[5] income is apportioned by applying a single factor apportionment formula based solely on sales. MCL 208.1301(2). In contrast, under the Compact's election provision, income may be apportioned using an equally-weighted, three-factor apportionment formula based on sales, property and payroll. The potential effect of electing "out" of the MBT Act's single-factor apportionment methodology is a reduction of the overall apportionment percentage for companies that do not have significant property and payroll located in Michigan.

**Decision in *IBM***

In *IBM*, 496 Mich 642, the Supreme Court considered the issue of whether MBT taxpayers must use a single-factor apportionment formula as mandated by the MBT Act or whether MBT taxpayers may elect to apply a three-factor apportionment formula under the Compact. The parties were asked by the Court to brief four issues:

> (1) whether the plaintiff could elect to use the apportionment formula provided in the Multistate Tax Compact, MCL 205.581, in calculating its 2008 tax liability to the State of Michigan, or whether it was required to use the apportionment formula provided in the Michigan

Business Tax Act, MCL 208.1101 *et seq.*; (2) whether § 301 of the Michigan Business Tax Act, MCL 208.1301, repealed by implication Article III(1) of the Multistate Tax Compact; (3) whether the Multistate Tax Compact constitutes a contract that cannot be unilaterally altered or amended by a member state; and (4) whether the modified gross receipts tax component of the Michigan Business Tax Act constitutes an income tax under the Multistate Tax Compact. [*Int'l Business Machines Corp v Dep't of Treasury*, 494 Mich 874 (2013).]

In its decision, the Court determined that for tax years 2008 through 2010,[6] the Legislature did not repeal by implication the three-factor apportionment formula as set forth in MCL 205.581 *et seq.*, and concluded that the taxpayer was entitled to use the Compact's three-factor apportionment formula in calculating its 2008 taxes. The Court also concluded that both the business income tax base and the modified gross receipts tax base of the MBT are "income taxes" within the meaning of the Compact. The Court did not reach the third issue of whether the Compact constitutes a contract. On November 14, 2014, the Michigan Supreme Court denied reconsideration. *Int'l Business Machines Corp v Dep't of Treasury*, [497 Mich 894]; 855 NW2d 512 (2014).

**Retroactive Repeal of the Compact Provisions by [2014] PA 282**

On September 11, 2014, 2013 SB 156 (SB 156) was enacted into law as [2014] PA 282, amending the MBT Act and expressly repealing the Compact provisions, as codified under MCL 205.581 to MCL 205.589. The Legislature gave the Act retroactive effect by providing as follows:

Enacting section 1. 1969 PA 343, MCL 205.581 to 205.589, is repealed retroactively and effective beginning January 1, 2008. It is the intent of the legislature that the repeal of 1969 PA 343, MCL 205.581 to 205.589, is to express the original intent of the legislature regarding the application of section 301 of the Michigan business tax act, 2007 PA 36, MCL 208.1301, and the intended effect of that section to eliminate the election provision included within section 1 of 1969 PA 343, MCL 205.581, and that the 2011 amendatory act that amended section 1 of 1969 PA 343, MCL 205.581, was to further express the original intent of the legislature regarding the application of section 301 of the Michigan business tax act, 2007 PA 36, MCL 208.1301, and to clarify that the election provision included within section 1 of 1969 PA 343, MCL 205.581, is not available under the income tax act of 1967, 1967 PA 281, MCL 206.1 to 206.713.

[2014] PA 282 thus amended the MBT Act to express the "original intent" of the Legislature with regard to (1) the repeal of the Compact provisions, (2) application of the MBT Act's apportionment provision under MCL 208.1301, and (3) the intended effect of the Compact's election provision under MCL 205.581.[8]

15

The effect of the amendments, as written, retroactively eliminates a taxpayer's ability to elect a three-factor apportionment formula in calculating tax liability under both the MBT Act and income tax act.

---

[3] The legislation, which was never enacted, was introduced in the wake of *Northwestern States Portland Cement Co v Minnesota*, 358 US 450; 79 S Ct 357; 3 L Ed 2d 421 (1959), which held that there is no Commerce Clause barrier to the imposition of a direct income tax on a foreign corporation carrying on interstate business within a taxing state.

[4] The Compact was never approved by Congress, but it was upheld against constitutional challenges in *US Steel*, 434 US 452.

[5] For a history of business taxation in Michigan, see *IBM*, 496 Mich at 648-650.

[6] The Legislature explicitly repealed the Compact apportionment provisions effective January 1, 2011, through enactment of 2011 PA 40.

[8] [2014] PA 282 also clarified that the Compact's election provision is not available under the income tax act of 1967, 1967 PA 281. [Bolded text in original.]

---

Between 2011 and 2015 these multi-state taxpayers all filed suit in the Court of Claims seeking refunds due under the Compact that had been refused by Treasury on the ground that the only apportionment method available was that established by the MBT. Most of the cases were filed prior to the Supreme Court's resolution of *IBM*, so the trial court prudently held the cases in abeyance pending that decision. Ultimately, however, the case was resolved not by the *IBM* decision, but by passage of 2014 PA 282, at least once the trial court upheld the statute against plaintiffs' constitutional challenges. We now turn our attention to those same constitutional arguments.

### III. ANALYSIS

### A. STANDARDS OF REVIEW

The trial court entered summary disposition in favor of Treasury under MCR 2.116(I)(1), a decision which we review de novo. *Kenefick v Battle Creek*, 284 Mich App 653, 654; 774 NW2d 925 (2009). MCR 2.116(I)(1) states: "If the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay." We likewise pay no deference to the trial court's statutory interpretation or resolution of constitutional issues, as both of those issues also require de novo review. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich

16

265, 277-278; 831 NW2d 204 (2013); *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 369; 803 NW2d 698 (2010).[2]

## B. GENERAL PRINCIPLES

Before delving into our analysis of these issues, we first set forth in chronological sequence several undisputed factual matters and legal principles that, although partially contained in section II of this opinion, are worth keeping in mind as they provide critical background for our decision:

1. Michigan became a member state to the Compact in 1970.

2. A member state can withdraw from the Compact by "enacting a statute repealing the same." MCL 205.581, art X(2).

3. Under the Compact as originally enacted, a foreign business taxpayer had the option of either utilizing the apportionment formula under the Compact or what was available under a state's tax laws. MCL 205.581, art III.

4. The Michigan Business Tax Act, enacted into law in 2007 and effective January 1, 2008, required foreign business taxpayers to use the apportionment formula contained in the Act. MCL 208.1301(2) and MCL 208.1303.

5. In 2011, the Legislature repealed the apportionment provision of the Compact, effective January 1, 2011. 2011 PA 40.

6. In *IBM*, the Supreme Court held that through 2011 PA 40 the Legislature created a window (from January 1, 2008 until January 1, 2011) wherein relevant taxpayers could still utilize the apportionment option available under Article IV of the Compact. The Court recognized, however, that the Legislature "could have— but did not—extend this retroactive repeal to the start date of the [MBT]." *IBM*, 496 Mich at 659.

7. In response to the *IBM* decision, the Legislature enacted 2014 PA 282, which retroactively repealed the Compact to the start date of the MBT. 2014 PA 282 therefore eliminated the three-year window the *IBM* Court stated was created by 2011 PA 40.

8. In general, it is constitutional for tax statutes to be retroactively amended and taxpayers do not generally have a vested interest in tax laws that exist at any particular moment. *United States v Carlton*, 512 US 26, 30; 114 S Ct 2018; 129 L Ed 2d 22 (1994).

---

[2] Though we can give no deference to the trial court's legal rulings, unlike the deference we give to discretionary calls on evidence or findings of fact, we nevertheless give the trial court's legal rulings careful consideration.

With these principles and facts in mind, we now turn our attention to the precise arguments put forth by the parties.

## C. STATE AND FEDERAL CONTRACT CLAUSES

We first address whether 2014 PA 282's repeal of the Compact violated the Contract Clauses of the state and federal constitutions. The United States Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ," US Const, art I, § 10, cl 1, while our state Constitution similarly provides that "[n]o . . . law impairing the obligation of contract shall be enacted." Const 1963, art 1, § 10. In conducting this constitutional review, we give deference to the legislative branch by presuming statutes to be constitutional, and we will construe them as constitutional unless their unconstitutionality is clearly apparent. *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich 295, 307; 806 NW2d 683 (2011). This presumption is " 'especially strong' " when tax legislation is concerned. *Id*. at 308 (citation omitted).

Like many provisions of the federal constitution, the Contract Clause has not been applied by the Supreme Court according to its plain, unequivocal language. As that Court has acknowledged, "[a]lthough the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.' " *Energy Reserves Group Inc v Kansas Power & Light Co*, 459 US 400, 410; 103 S Ct 697; 74 L Ed 2d 569 (1983), quoting *Home Building & Loans Ass'n v Blaisdell*, 290 US 398, 434; 54 S Ct 231; 78 L Ed 413 (1934). In order to determine whether the clause's prohibition should be accommodated, the Supreme Court developed a three-part test. The first part of the three-part test is "whether the change in state law has 'operated as a substantial impairment of a contractual relationship.' " *General Motors Corp v Romein*, 503 US 181, 186; 112 S Ct 1105; 117 L Ed 2d 328 (1992), quoting *Allied Structural Steel Co v Spannaus*, 438 US 234, 244; 98 S Ct 2716; 57 L Ed 2d 727 (1978).

Whether a change in state law has resulted in "a substantial impairment of a contractual relationship" itself requires consideration of three factors: "[1] whether there is a contractual relationship, [2] whether a change in law impairs that contractual relationship, and [3] whether the impairment is substantial." *Romein*, 503 US at 186. If this first prong of the test is met, i.e., "if the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation . . . ." *Energy Resources Group*, 459 US at 411. Finally, the third part of the test is "whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption." *Id*. at 412 (citation, quotation marks, and brackets omitted). See also *Borman LLC v 18718 Borman LLC*, 777 F3d 816, 824-825 (CA 6, 2015).[3]

We agree with the trial court that the Compact is not a binding contract under Michigan law. Because Congress did not approve the Compact, Michigan law governs its interpretation. See *McComb v Wambaugh*, 934 F2d 474, 479 (CA 3, 1991) (where the consent of Congress is

---

[3] Lower federal court decisions are not binding on this Court but may be considered for their persuasive value. *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

18

not obtained, a compact does not express federal law and must be construed as state law).  The trial court provided the following analysis of the Compact under Michigan law, with which we are in full agreement:

> In Michigan, there is a "strong presumption that statutes do not create contractual rights." *Studier v Mich Pub Sch Employees' Retirement Bd*, 472 Mich 642, 661; 698 NW2d 350 (2005).  "In order for a statute to form the basis of a contract, the statutory language must be plain and susceptible of no other reasonable construction than that the Legislature intended to be bound to a contract." *Id*. at 662 (quotation marks and citation omitted).  As noted in the dissent in *IBM*, "[t]his presumption is grounded in the principle that 'surrenders of legislative power are subject to strict limitations that have developed in order to protect the sovereign prerogatives of state governments.' " *IBM*, 496 Mich at 682 (McCORMACK, J., dissenting), quoting *Studier*, 472 Mich at 661.

> There are no words in the Compact, as adopted by the Legislature under 1969 PA 343, that indicate that the state intended to be bound to the Compact, and specifically to Article III(1).  Therefore, the presumption must be that the state did not surrender its legislative power to require use of a particular apportionment formula.  Such interpretation comports with the Supreme Court's recognition of "the basic principle[] that the States have wide latitude in the selection of apportionment formulas . . . ." *Moorman* [*Mfg Co v Blair*], 437 US [267,] 274[; 98 S Ct 2340; 57 L ED 2d 197 (1978)].  This interpretation is also consistent with the Court's recent acknowledgement that states "do not easily cede their sovereign powers . . . ." *Tarrant* [*Regional Water Dist v Herrmann*], 133 S Ct [2120,] 2132[; 186 L Ed 2d 153 (2013)].  Because there is no clear indication under MCL 205.581 that the state contracted away its ability to either select an apportionment formula that differs from the Compact, or to repeal the Compact altogether, the Court concludes that no contractual obligation was created by enactment of 1969 PA 343 that would prohibit the enactment of [2014] PA 282.

See also *IBM*, 496 Mich at 683 (McCORMACK, J., dissenting) (opining that the Compact's withdrawal provision is "strong evidence that the member states did not intend to be contractually bound, as it demonstrates the member states' desire to retain control over their sovereignty with respect to taxation.").  Accordingly, plaintiffs' state and federal Contract Clause arguments are unavailing because they are premised on the incorrect view that the Compact comprises a binding contract under state law.[4]  *Romein*, 503 US at 186.

---

[4] We also point out that because a legislature cannot bind a subsequent legislature under Michigan law, 1969 PA 343 did not restrict a subsequent legislature's ability to correct an error prospectively or retroactively.  See, e.g., *Studier*, 472 Mich at 660; *LeRoux v Secretary of State*, 465 Mich 594, 615-616; 640 NW2d 849 (2002).  See also *Atlas v Wayne Co Board of Auditors*, 281 Mich 596, 599; 275 NW 507 (1937) ("The power to amend and repeal legislation as well as to enact it is vested in the legislature, and the legislature cannot restrict or limit its right to exercise the power of legislation by prescribing modes of procedure for the repeal or amendment of statutes; nor may one legislature restrict or limit the power of its successors.").

However, plaintiffs also argue, using law developed under the federal Compact Clause, US Const, art 1, § 10[5], that Michigan created binding contractual obligations by entering into the Compact and that those binding obligations are enforceable under the Contract Clause. See, e.g., *Thompson v Auditor General*, 261 Mich 624, 636; 247 NW 360 (1933), citing *Green v Biddle*, 21 US (8 Wheat) 1; 5 L Ed 547 (1823), and *Doe v Ward*, 124 F Supp 2d 900, 915 n 20 (WD Penn, 2000), quoting *Aveline v Pennsylvania Bd of Probation and Parole*, 729 A 2d 1254, 1257 n 10 (Pa, 1999). Relying upon case law addressing whether an agreement between two or more states constitutes a compact for purposes of the Compact Clause, in its own words the trial court considered "[t]he three 'classic' indicia of a binding interstate compact[, which] are (1) the establishment of a joint regulatory body, (2) the requirement of reciprocal action for effectiveness, and (3) the prohibition of unilateral modification or repeal." See *Northeast Bancorp, Inc v Bd of Governors of the Fed Reserve Sys*, 472 US 159, 175; 105 S Ct 2545; 86 L Ed 2d 112 (1985) and *Seattle Master Builders Ass'n v Pacific Northwest Electric Power & Conservation Planning Council*, 786 F2d 1359, 1363 (CA 9, 1986). Applying these same factors, we conclude that the Compact contained no features of a binding interstate compact and, therefore, was not a compact enforceable under the Contract Clause.

With respect to the first factor, whether the Compact created a joint regulatory agency, although the Compact created the Commission, MCL 205.581, art VI, it did not confer any governing or regulatory powers to that body. Rather, the Commission's powers included studying state and local tax systems, developing and recommending proposals for greater uniformity, and compiling information helpful to the party states. MCL 205.581, art VI(3). As the trial court noted, "[n]one of these purposes is regulatory, and it in no way indicates a delegation of sovereign authority to tax," a point the Court in *US Steel Corp*, 434 US at 473, also made clear:

> [The Compact] does not purport to authorize the member States to exercise any powers they could not exercise in its absence. *Nor is there any delegation of sovereign power to the Commission; each State retains complete freedom to adopt or reject the rules and regulations of the Commission.* [emphasis added.]

Concerning the second factor, we adopt the trial court's finding that the Compact did not require reciprocal action:

> There is nothing reciprocal about the Compact's provisions. Each member state operates its respective tax systems independently from the tax systems of other Member States, and the determination of tax in one state is generally independent of the determination in another state. With respect to apportionment formulas, in particular, Articles III(1) and IV's application in one

---

[5] Plaintiffs do not allege a violation of the Compacts Clause, and for good reason. According to the Supreme Court, the Compacts Clause is limited to "agreements that are 'directed to the formation of any combination tending to the increase of political power in the States, which may encroach upon or interfere with the just supremacy of the United States.' " *US Steel*, 434 US at 471, quoting *Virginia v Tennessee*, 148 US 503, 519; 13 S Ct 728; 37 L Ed 537 (1893). The Compact does nothing of the sort, and essentially exists for the benefit of multi-state taxpayers. It gives no advantage to the States vis-a-vis the federal government.

member state has no bearing on another state. And the functionality of one member state's apportionment methodology does not hinge on whether another member state's apportionment methodology is reciprocal in nature. As the Supreme Court recognized in *Moorman Mfg Co* [437 US at 274], "the States have wide latitude in the selection of apportionment formulas." Consistent with *Moorman*, a Member State's decision to allow or eliminate a certain apportionment formula is unaffected by the choice of formula that another member state has made.

Finally, the third factor also requires a conclusion that the Compact allows unilateral modification and withdrawal. The Compact expressly says that member states are free to withdraw unilaterally without notice to other member states. As previously noted, MCL 205.581, art X(2), provides that a state may withdraw from the Compact by enacting a statute repealing it. See also *US Steel Corp*, 434 US at 473 ("[E]ach state is free to withdraw at any time."). Because the Compact specifically allows member states to unilaterally withdraw (subject to one condition, discussed later in this opinion) by merely passing legislation doing so, which is precisely what Michigan did through 2014 PA 282, we hold that the Compact was not a binding agreement on this state. Instead, it was an advisory agreement that was agreed to by participating states as a means of addressing interstate business taxation and threatened federal intervention into that area. 2014 PA 282, which removed the state as a member of the Compact, was therefore not prohibited. [6]

Before concluding on this issue, we point out that even if there was a binding contractual commitment on the part of the state, there likely would still be no violation of the Contract Clause. The United States Court of Appeals for the Sixth Circuit recently stated that "an impairment takes on constitutional dimensions only when it interferes with reasonably expected contractual benefits." *Borman LLC*, 777 F3d at 826, citing *US Trust Co of New York v New Jersey*, 431 US 1, 21, 31; 97 S Ct 1505; 52 L Ed 2d 92 (1977). As the Court has previously declared, "a statute does not violate the Contract Clause simply because it has the effect of restricting, or even barring altogether, the performance of duties created by contracts entered into prior to its enactment." *Exxon Corp v Eagerton*, 462 US 176, 190; 103 S Ct 2296; 76 L Ed 2d 497 (1983). Given the fact that these taxpayers have no vested interest in the continuation of a tax law, and that tax law is one of the more highly regulated areas in the law, it is difficult to see what reasonable expectation was actually interfered with. See, e.g., *All Star Inc v Georgia Atlanta Amusements, LLC*, 332 Ga App 1, 9; 770 SE 2d 22 (2015), and cases cited therein. This is particularly so when considering Treasury's position on this issue over the past five years or so.

---

[6] We also point out, as did Justice MCCORMACK in her *IBM* dissent, that the member states' course of performance shows that unilateral amendments or withdrawals had long been accepted. As Justice MCCORMACK noted, "member states did *not* view strict adherence to Articles III and IV as a binding contractual obligation, as Compact members have deviated from the Compact's election provision and apportionment formula without objection from other members." *IBM*, 496 Mich at 681-682 (MCCORMACK, dissenting).

In any event, because the Compact is not binding, either as a contract or a compact, it is subject to Michigan law concerning the interpretation of statutes.

## D. RETROACTIVITY AND THE DUE PROCESS CLAUSES

We hold, as did the trial court, that the retroactive repeal of the Compact did not violate the Due Process Clauses of either the state or federal constitutions or Michigan's rules regarding retrospective legislation. Nor did it violate the terms of the Compact itself.

In confronting these issues it is certainly worth repeating that, "[s]tatutes are presumed to be constitutional, and this presumption is especially strong with respect to tax legislation. The party challenging the constitutionality of a statute has the burden of proving the law's invalidity." *Gen Motors Corp*, 290 Mich App at 369 (citations omitted). In *General Motors Corp* we noted that the Due Process Clause of the Fourteenth Amendment has been read by the Supreme Court to contain a substantive component even though the Clause itself contains only a procedural component:

> The Fourteenth Amendment to the United States Constitution and Const 1963, art 1, § 17 guarantee that no state shall deprive any person of "life, liberty or property, without due process of law." Although textually only providing procedural protections, the Due Process Clause has a substantive component that protects individual liberty and property interests from arbitrary government actions. But to be protected by the Due Process Clause, a property interest must be a vested right. A vested right is an interest that the government is compelled to recognize and protect of which the holder could not be deprived without injustice. [*Id*. at 370 (citations and quotation marks omitted).]

Both the federal courts and our state courts have uniformly held that the retroactive modification of tax statutes does not offend due process considerations so long as there is a legitimate legislative purpose that is furthered by a rational means. For example, in *Welch v Henry*, 305 US 134, 146-151; 59 S Ct 121; 83 L Ed 87 (1938), the United States Supreme Court rejected a due process challenge to a Wisconsin statute enacted in 1935 that imposed a tax on income received in 1933. The Supreme Court explained that "a tax is not necessarily unconstitutional because retroactive." *Id*. at 146. It further concluded that,

> Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process, and to challenge the present tax it is not enough to point out that the taxable event, the receipt of income, antedated the statute. [*Id*. at 146-147.]

In order to resolve this issue, it is necessary "[i]n each case . . . to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation." *Id*. at 147.

*Carlton*, 512 US 26, involved a due process challenge to the retroactive application of a 1987 amendment of a federal tax law to a taxpayer's transactions that occurred in 1986. The Supreme Court noted that it "repeatedly has upheld retroactive tax legislation against a due process challenge." *Carlton*, 512 US at 30. In addressing the "harsh and oppressive" language in *Welch*, the Court explained that "[t]he 'harsh and oppressive' formulation . . . does not differ from the prohibition against arbitrary and irrational legislation that applies generally to enactments in the sphere of economic policy." *Id*. (citation and quotation marks omitted). That is, if the retroactive application of a statute is supported by a legitimate legislative purpose that is furthered by rational means, then the wisdom of the legislation is a determination left *exclusively* to the legislative and executive branches. *Id*. at 30-31. Once the relatively easy two part test is met, a court has no further business addressing any policy implications emanating from the statute.

*Carlton* makes clear that a taxpayer's reliance on a view of the law—even a correct view of the law—does not prevent the legislature from retroactively amending a statute. In *Carlton*, the 1987 amendment was adopted as a curative measure because the tax provision adopted in 1986 failed to require that the decedent must have owned the stock in question in order for the decedent's estate to qualify for the deduction. *Id*. at 31. "As a result, any estate could claim the deduction simply by buying stock in the market and immediately reselling it to an ESOP [employee stock ownership plan], thereby obtaining a potentially dramatic reduction in (or even elimination of) the estate tax obligation." *Id*. Congress did not contemplate such a broad application of the deduction when it was originally enacted in 1986. *Id*. In rejecting the taxpayer's due process challenge to the retroactive application of the 1987 amendment, the Supreme Court reasoned:

> We conclude that the 1987 amendment's retroactive application meets the requirements of due process. First, Congress'[s] purpose in enacting the amendment was neither illegitimate nor arbitrary. Congress acted to correct what it reasonably viewed as a mistake in the original 1986 provision that would have created a significant and unanticipated revenue loss. There is no plausible contention that Congress acted with an improper motive, as by targeting estate representatives such as Carlton after deliberately inducing them to engage in ESOP transactions. Congress, of course, might have chosen to make up the unanticipated revenue loss through general prospective taxation, but that choice would have burdened equally "innocent" taxpayers. Instead, it decided to prevent the loss by denying the deduction to those who had made purely tax-motivated stock transfers. We cannot say that its decision was unreasonable. [*Id*. at 32.]

The *Carlton* Court explained that Congress had acted promptly and established only a modest period of retroactivity. *Id*. The Court took note of the customary congressional practice of giving general revenue statutes effective dates that precede the dates of actual enactment, confined to short and limited periods related to the practicalities of producing national legislation. *Id*. at 32-33.

In *Carlton*, "the actual retroactive effect of the 1987 amendment extended for a period only slightly greater than one year." *Id*. at 33. Although it was uncontested that the taxpayer in *Carlton* had relied on the original 1986 version of the tax statute when engaging in stock

transactions in December 1986, and the reading of the original statute on which the taxpayer relied appeared to have been correct, the taxpayer's reliance alone was insufficient to establish a due process violation. *Id*. "Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code." *Id*. And, the 1987 amendment did not impose "a wholly new tax." *Id*. at 34 (quotation marks omitted). Because the retroactive application of the 1987 amendment was rationally related to a legitimate legislative purpose, the Court held that the amendment as applied to the taxpayer's 1986 transactions comported with due process. *Id*. at 35.

Michigan law is, of course, in accord. In *Detroit v Walker*, 445 Mich 682, 698; 520 NW2d 135 (1994), our Supreme Court noted that "[t]he concern regarding the retroactivity of statutes arises from constitutional due process principles that prevent retrospective laws from divesting rights to property or vested rights, or the impairment of contracts."

> A vested right has been defined as an interest that the government is compelled to recognize and protect of which the holder could not be deprived without injustice. Nonetheless, when determining whether a right is vested, policy considerations, rather than inflexible definitions must control, and we must consider whether the holder possesses what amounts to be a title interest in the right asserted. [*Id*. at 699 (citations omitted).]

A vested right is a legal or equitable title to the present or future enjoyment of property or to the present or future enforcement of a demand or a legal exemption of a demand by another. *GMAC, LLC v Treasury Dep't*, 286 Mich App 365, 377; 781 NW2d 310 (2009). To be vested, a right must be more than a mere expectation based on an anticipated continuance of the present laws. *Id*. Relative to taxpayers, the *Walker* Court—just like the United States Supreme Court in *Carlton*—held that "it is also well established that a taxpayer does not have a vested right in a tax statute or in the continuance of any tax law." *Walker*, 445 Mich at 703. Not surprisingly, we have more recently held, consistent with *Walker*, that:

> [A] vested right cannot be premised on an expectation that general laws will continue *and certainly cannot be premised on the continuation of tax law*. In light of the fact that plaintiffs did not have a vested right, the contention that due process rights were violated is simply without merit. [*GMAC*, 286 Mich App at 378.]

Likewise, in *Gen Motors Corp*, 290 Mich App at 371, we held that the plaintiff's "claim for a refund of use taxes it paid was not a vested right but rather a mere expectation that its claim might succeed in light of" an earlier decision of this Court. The plaintiff's "claim rest[ed] on the theory that it held a vested chose in action—its refund claim—and relies on cases involving rights of action for damages to property or personal injury." *Id*. But, this Court noted, the case before it involved a tax rather than a right of action, and the plaintiff, "as a taxpayer, does not have a vested right in a tax statute or in the continuance of any tax law." *Id*. This Court concluded that the Legislature had not acted illegitimately by enacting a statute for the purpose of reversing a decision of this Court because the statute did not reverse a judicial decision or repeal a final judgment. *Id*. at 372-373. Stating the obvious we said that "[I]t is legitimate for the Legislature to amend a law that it believes the judiciary has wrongly interpreted." *Id*., citing *GMAC*, 286 Mich App at 380 ("[I]t is the province of the Legislature to acquiesce in the judicial

24

interpretation of a statute or to amend the legislation to obviate a judicial interpretation."). "A legislature's action to mend a leak in the public treasury or tax revenue—whether created by poor drafting of legislation in the first instance or by a judicial decision—with retroactive legislation has almost universally been recognized as 'rationally related to a legitimate legislative purpose.' " *Gen Motors Corp*, 290 Mich App at 373, quoting *Carlton*, 512 US at 35.

In *Gen Motors Corp*, 290 Mich App at 376, the retroactive application of the statute did not exceed the modesty limitation of the Due Process Clause, as the statutory amendment did not reach back in time to assess a wholly new tax on long-concluded transactions. *Id*. Rather, it confirmed a tax that had been assessed and paid for many years. *Id*. Quite similar to this case, the Legislature acted promptly in response to this Court's earlier decision by correcting what might have resulted in a significant loss of revenue. *Id*. This Court reasoned that "the nominal period to which the amendment retrospectively applies—five years—cannot be said to extend beyond the taxpayers' interest in finality and repose because the period of retroactivity is consistent with the applicable statute of limitations." *Id*. The period of retroactivity was "comparable to the time frames of other retroactive legislation that this Court, other state courts, and federal courts have held were within the modesty limits of the Due Process Clause." *Id*. at 377 (footnote omitted); see also *id*. at 377 n 3 (citing authorities in support of this proposition).

On the basis of the above authorities, we hold that the retroactive impact of 2014 PA 282 did not violate the due process clauses of either the state or federal constitutions. First, plaintiffs had no vested right in the tax laws or in the continuance of any tax laws. *Carlton*, 512 US at 33; *Walker*, 445 Mich at 703; *GMAC*, 286 Mich App at 378. Indeed, plaintiffs attempt to characterize their tax refund claims as causes of action that comprised vested interests, but that same argument was considered and rejected in *Gen Motors Corp*, 290 Mich App at 371. Plaintiffs did not have a vested interest protected by the due process clause in the continuation of the Compact's apportionment provision.

Second, case law supports the proposition that the Legislature had a legitimate purpose for giving retroactive effect to 2014 PA 282. As the trial court explained, a Senate Fiscal Agency analysis of SB 156 addressed the potential ramifications of failing to accord retroactive effect to 2014 PA 282:[7]

> The first enacting section of the bill would retroactively repeal the State's enactment of the Multistate Tax Compact, effective January 1, 2008. As a result, taxpayers filing under the MBT would not be allowed to use alternative apportionment calculations provided under the Compact when computing a Michigan tax base. While the Department of Treasury has not allowed taxpayers to use these alternative calculations, the Michigan Supreme Court's recent decision in *IBM Corp. v Department of Treasury* may enable certain taxpayers to use these calculations, and the Department estimates that approximately $1.1

---

[7] Legislative bill analyses can be probative in determining historical background leading up to the introduction of legislation, though we do not look to them for official statements of legislative intent. See *North Ottawa Community Hosp v Kieft*, 457 Mich 394, 406 n 12; 578 NW2d 267 (1998); *Kelly Servs, Inc v Dep't of Treasury*, 296 Mich App 306, 317; 818 NW2d 482 (2012).

billion in refunds would be paid as a result. Because MBT revenue is directed to the General Fund, these refunds would reduce General Fund revenue, and *the bill would prevent a reduction in General Fund revenue of $1.1 billion.* [Senate Legislative Analysis, SB 156, September 10, 2014, p 5 (emphasis added).]

It is legitimate legislative action to both (1) correct a perceived misinterpretation of a statute, and (2) eliminate a significant revenue loss resulting from that misinterpretation. See *Carlton*, 512 US at 32 (finding a legitimate legislative purpose for the retroactive application of tax legislation meant to correct what Congress reasonably viewed as a mistake in earlier legislation "that would have created a significant and unanticipated revenue loss."), and *Gen Motors Corp*, 290 Mich App at 373 (noting that "it is legitimate for the Legislature to amend a law that it believes the judiciary has wrongly interpreted" and that "[a] legislature's action to mend a leak in the public treasury or tax revenue—whether created by poor drafting of legislation in the first instance or by a judicial decision—with retroactive legislation has almost universally been recognized as rationally related to a legitimate legislative purpose.") (quotation marks and citation omitted). Accordingly, the retroactive application of 2014 PA 282 served a legitimate governmental purpose.

The retroactive application of 2014 PA 282 was likewise a rational means to further these legitimate purposes. Four factors are relevant in this determination. First, like the statutes in *Carlton* and *Gen Motors Corp*, 2014 PA 282 "does not reach back in time to assess a 'wholly new tax' on long-concluded transactions." *Id.* at 376. Rather, 2014 PA 282 clarifies the method of apportioning the tax base for a previously enacted tax, the MBT, by confirming that the single-factor apportionment method must be utilized and that the three-factor method may not be elected. Second, plaintiffs, as a matter of law, could not have relied on the availability of the three-factor apportionment method. As discussed, taxpayers do "not have a vested right in a tax statute or in the continuance of any tax law," *Walker*, 445 Mich at 703, and states have wide latitude in the selection of apportionment methodologies, *Moorman*, 437 US at 274. And a taxpayer's reliance on a particular tax law is insufficient to establish a due process violation because "[t]ax legislation is not a promise, and a taxpayer has no vested right in" a tax statute. *Carlton*, 512 US at 33. And, factually, plaintiffs either were—or should have been—aware that the state (through Treasury) had been arguing since at least 2011 (and even then relative to the 2008-2009 tax years) that the apportionment provision in the Compact was no longer available. See *Int'l Business Machines Corp v Dep't of Treasury*, unpublished opinion per curiam of the Court of Appeals, issued November 20, 2012 (Docket No 306618), rev'd by *IBM*, 496 Mich 642.

Third, there is no doubt that the Legislature acted promptly to correct the error. As the trial court found, "[n]ot until July 14, 2014, when the Court decided *IBM*, was it made clear to the Legislature that 2007 PA 36 was defective. SB 156, H-1, which added the retroactive repeal of the Compact[] provisions, was introduced on September 9, 2014, and was enacted into law on September 11, 2014." Fourth, the six and one-half year retroactive period was sufficiently modest relative to time frames of other retroactive legislation that have been upheld by Michigan courts, federal courts, and other state courts. See *Gen Motors Corp*, 290 Mich App at 376-377 (upholding a five-year retroactive application), and at 377 n 3 (citing case law from Michigan and other jurisdictions approving equivalent retroactive periods); *GMAC*, 286 Mich App at 378 (affirming a seven-year retroactive period). These factors squarely lead to the conclusion that

26

the retroactive application of 2014 PA 282 was a rational means of furthering legitimate governmental purposes.

Some plaintiffs rely on *Newsweek, Inc v Fla Dep't of Revenue*, 522 US 442; 118 S Ct 904; 139 L Ed 2d 888 (1998), contending that Michigan engaged in a "bait and switch" by enticing foreign companies to engage in commerce in Michigan by providing the three-factor apportionment formula, and then retroactively taking away this apportionment method. But reliance on *Newsweek* is misplaced. In *Newsweek*, 522 US at 444, the Supreme Court held that a state could not engage in a "bait and switch" by holding out what appeared to be a clear and certain remedy, i.e., a tax appeal that could be pursued after paying disputed taxes, and then later declare that no such remedy exists. Here, however, Michigan has not taken away any procedure for seeking a refund, nor has any procedural remedy been denied. Instead, the Michigan legislature has done what legislatures across the country have had to do—clarify through statutory amendment the intended meaning of a statutory provision that had been misread by the courts. Further, Michigan never engaged in a "bait and switch" because it never suggested that the three-factor method of apportionment under the Compact could not be altered. To the contrary, the Compact expressly indicated a member state *could unilaterally* get out of the Compact at any time, and as we just emphasized, Michigan has consistently maintained that the three-factor apportionment method could not be used under the MBT Act, as reflected in the litigation in *IBM*, 496 Mich 642.[8]   The retroactive provisions of 2014 PA 282 were not enacted in violation of the state or federal due process clauses.

Plaintiffs also argue that retroactive withdrawal from the Compact is prohibited by 1969 PA 343, MCL 205.581, art X(2), which states that a party state may by statute withdraw from the Compact but that "[n]o withdrawal shall affect any liability already incurred by or chargeable to a party state prior to the time of such withdrawal." According to plaintiffs retroactive withdrawal is nonsensical because Michigan *participated* under the Compact in the period from 2008 through 2010 by paying dues, voting, participating in Commission leadership and meetings, and exchanging confidential taxpayer information. However, plaintiffs have failed to provide any law establishing the relevancy of such evidence, and since the statutory and constitutional issues raised are legal issues, *Hunter v Hunter*, 484 Mich 247, 257; 771 NW2d 694 (2009) ("We review de novo questions of law involving statutory interpretation and questions concerning the constitutionality of a statute."), we fail to see how Michigan's participation in the Commission impacts the legal import of the statute. Accordingly, we are unconvinced by plaintiffs' contention that Michigan's alleged participation in the Commission during the relevant timeframe affects the question whether 2014 PA 282 retroactively repealed the Compact provisions.

## F.  SEPARATION OF POWERS

---

[8] Some plaintiffs suggest that the retroactive application of 2014 PA 282 violates Michigan case law setting forth rules regarding retrospective legislation. This unpreserved argument fails because plaintiffs lacked a vested interest in the continuance of tax laws and in a tax refund based on the continuation of the Compact election provisions.

We now turn our attention to the argument that retroactive application of 2014 PA 282 violates the Separation of Powers Clause of the Michigan Constitution. Const 1963, art 3, § 2 states:

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.

"The legislative power of the State of Michigan is vested in a senate and a house of representatives." Const 1963, art 4, § 1. "Simply put, legislative power is the power to make laws. By contrast, a defining aspect of judicial power is the interpretation of law." *People v Konopka*, ___ Mich App ___, ___; ___ NW2d ___ (2015); slip op at 9 (quotation marks and citation omitted).

There is little doubt that the Legislature lacks authority to reverse a judicial decision or to repeal a final judgment, *Wylie v Grand Rapids City Comm*, 293 Mich 571, 582; 292 NW 668 (1940); *Gen Motors Corp*, 290 Mich App at 372-373, but there is also little doubt but that it also has the authority—if not the obligation—to amend a statute that it believes has been misconstrued by the judiciary, *Romein v Gen Motors Corp*, 436 Mich 515, 537; 462 NW2d 555 (1990), reh den 437 Mich 1202 (1990), aff'd 503 US 181; 112 S Ct 1105; 117 L Ed 2d 328 (1992); see also *Gen Motors Corp*, 290 Mich App at 373 (stating that "it is legitimate for the Legislature to amend a law that it believes the judiciary has wrongly interpreted."). This power to amend includes the power to retroactively correct the judiciary's misinterpretation of legislation:

> [The Legislature possesses the] authority to retroactively amend legislation perceived to have been misconstrued by the judiciary. Such retroactive amendments based on prior judicial decisions are constitutional if the statute comports with the requirements of the Contract and Due Process Clauses of the federal and state constitutions, and *so long as the retroactive provisions of the statute do not impair final judgments*.
>
> Numerous courts have recognized that the Legislature may cure the judicial misinterpretation of a statute. For instance, the federal courts have upheld statutes that retroactively abrogate statutory rights, at least where the repealing statute does not impair final judgments. In *Seese v Bethlehem Steel Co*, 168 F2d 58, 62 (CA 4, 1948), the court reasoned that the Legislature's enactment of a retroactive statute repealing the effects of a prior judicial decision is not an exercise of judicial power[.] [*Romein*, 436 Mich at 537 (emphasis added).]

See also *Konopka*, ___ Mich App at ___; slip op at 10-11 (finding no separation of powers violation where the Legislature retroactively amended a statute that was perceived to have been misconstrued by the judiciary); *GMAC*, 286 Mich App at 380 ("[I]t is the province of the Legislature to acquiesce in the judicial interpretation of a statute or to amend the legislation to obviate a judicial interpretation.").

There are several reasons why the Legislature did not violate the separation of powers clause by retroactively repealing the Compact to January 1, 2008, thereby obviating the *IBM* Court's legal conclusions. First, 2014 PA 282 did not reverse a judicial decision or repeal a final judgment. In *IBM*, 496 Mich at 645, 658-659, 662, the lead opinion held that *2007 PA 36* did not implicitly repeal the Compact's election provision. 2014 PA 282 did not overturn this judicial interpretation of that 2007 law. Instead, the Legislature created a new law, not interpreted by the *IBM* Court, that explicitly repealed the Compact provisions effective beginning January 1, 2008, to further what the Legislature understood to have been its original intent when it enacted 2007 PA 36. This did not impinge on the judiciary's role of interpreting the law but instead corrected a mistake that was made clear by the holding in *IBM*. That is, the Legislature in 2014 PA 282 *explicitly* repealed the Compact provisions after the holding in *IBM* revealed that the Compact election provision had not been *implicitly* repealed by enactment of 2007 PA 36. Although 2014 PA 282 may have rendered moot the effect of the judicial interpretation in *IBM*, this did not overturn that Court's judgment and did not violate the separation of powers doctrine. See *Romein*, 436 Mich at 537 (citing with approval a federal case "reason[ing] that the Legislature's enactment of a retroactive statute repealing the effects of a prior judicial decision is not an exercise of judicial power"); *GMAC*, 286 Mich App at 380 ("[I]t is the province of the Legislature to acquiesce in the judicial interpretation of a statute or to amend the legislation to obviate a judicial interpretation.").

Some plaintiffs cite *Presque Isle Twp Bd of Ed v Presque Isle Co Bd of Ed*, 364 Mich 605, 612; 111 NW2d 853 (1961), for the proposition that a legislative body may not declare what its intention was on a former occasion such that it would affect past transactions. Although *Presque Isle* cited a Wisconsin case[9] that contained this language, the actual holding in *Presque Isle* was the unremarkable proposition that one legislator's present recollection of what he intended when a bill was passed could not be received in evidence for use in interpreting a statute. *Id*. The holding in *Presque Isle* is inapplicable to this issue.[10]

Finally, plaintiffs proclaim that they are entitled to the benefit of the *IBM* Court's ruling as to the effect of 2007 PA 40. They are wrong. Instead, it is well-settled that our duty as an appellate court is to apply the most recent legislative pronouncement on an issue pending before this Court when the legislature makes the new law or amendment retroactive. As stated by the United States Supreme Court:

> It is true, as petitioners contend, that Congress can always revise the judgments of Article III courts in one sense: When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that

---

[9] *Northern Trust Co v Snyder*, 113 Wis 516; 89 NW 460 (1902).

[10] Plaintiffs also contend that the 2014 Legislature could not declare the intent of the Legislature in 2007 because only 15% of the members of the 2014 Legislature were members of the 2007 Legislature. We have been presented with no authority stating that the composition of the Legislature affects whether it may clarify its original intent in enacting a prior law, *Hover v Chrysler Corp*, 209 Mich App 314, 319; 530 NW2d 96 (1994), and cannot square that purported rule with the overwhelming case law recognizing the Legislature's power to correct what it perceives to be an incorrect interpretation of a statute.

were rendered before the law was enacted, and must alter the outcome accordingly. . . . It is the obligation of the last court in the hierarchy that rules on the case to give effect to Congress's latest enactment, even when that has the effect of overturning the judgment of an inferior court, since each court, at every level, must "decide according to existing laws." Having achieved finality, however, a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was. [*Plout v Spendthrift Farms, Inc.,* 514 US 211, 226-227; 115 S Ct 1447; 131 L Ed 2d 328 (1995) (citations omitted).]

2014 PA 282 did not declare what the law was as to any final judgment, as each of these cases was pending[11] when the statute was passed. In other words, none of these cases had a judgment that was "frozen in time," *King v McPherson Hospital*, 290 Mich App 299, 306; 810 NW2d 594 (2010), and so it was constitutionally permissible to apply 2014 PA 282 to these pending cases.

For all these reasons, we hold that the Legislature did not violate the separation of powers provision of the state Constitution when it enacted 2014 PA 282.

## G.  COMMERCE CLAUSE

We next turn to plaintiff's argument that 2014 PA 282 violates the Commerce Clause of the United States Constitution.

The Commerce Clause, US Const, art I, § 8, cl 3, provides: "The congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes . . . ." Although the Commerce Clause says nothing about the protection of interstate commerce in the absence of any action by Congress, the Supreme Court has greatly expanded this Clause to include "a negative sweep" by "prohibit[ing] certain state actions that interfere with interstate commerce." *Quill Corp v North Dakota*, 504 US 298, 309; 112 S Ct 1904; 119 L Ed 2d 91 (1992). According to the Court, the Commerce "Clause prohibits discrimination against interstate commerce and bars state regulations that unduly burden interstate commerce." *Id*. at 312.

> The United States Supreme Court . . . has established a four-pronged test to determine whether a state tax violates the Commerce Clause. *Complete Auto Transit, Inc v Brady*, 430 US 274, 279; 97 S Ct 1076; 51 L Ed 2d 326 (1977). A state tax will withstand scrutiny under a Commerce Clause challenge and will be held to be constitutionally valid under the four-pronged test articulated in *Complete Auto* provided that the tax: (1) is applied to an activity having a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services

---

[11] Although International Business Machines is a party to these appeals, its tax appeal from the 2008 tax year—the tax year subject to the Supreme Court's 2014 *IBM* decision, is not at issue here.

provided by the state. [*Caterpillar, Inc v Dep't of Treasury*, 440 Mich 400, 415; 488 NW2d 182 (1992) (footnote omitted).]

Only the third prong is challenged in this case; plaintiffs contend that 2014 PA 282 discriminates against interstate commerce. "A tax violates the third prong of the *Complete Auto* test if it is facially discriminatory, has a discriminatory purpose, *or* has the effect of unduly burdening interstate commerce." *Caterpillar*, 440 Mich at 422, citing *Amerada Hess Corp v NJ Dep't of Treasury*, 490 US 66, 75; 109 S Ct 1617; 104 L Ed 2d 58 (1989).

We hold that 2014 PA 282 does not discriminate against or unduly burden interstate commerce. First, 2014 PA 282 is not facially discriminatory. A tax statute is facially discriminatory if there is "an explicit discriminatory design to the tax." *Id*. at 76. 2014 PA 282 does not, on its face, create any classification based on a taxpayer's state of origin or the location of commerce. Rather, it repeals the Compact and eliminates the provision allowing election of a three-factor apportionment formula for *all* taxpayers, both in-state and out-of-state companies. Therefore, 2014 PA 282 does not reflect an explicit discriminatory design, and no facial discrimination occurred.

Second, 2014 PA 282 does not have a discriminatory purpose. A discriminatory purpose may be found, for example, where a tax statute "was motivated by an intent to confer a benefit upon local industry not granted to out-of-state industry[.]" *Amerada Hess Corp*, 490 US at 76. 2014 PA 282 recites that it was enacted to express the original intent of the Legislature to eliminate the election provision for purposes of the MBT Act and the income tax act of 1967, as well as to protect state revenues. Senate Legislative Analysis, SB 156, September 10, 2014, p 5. There is no evidence of a legislative intent to give a benefit to local industry that is denied to out-of-state businesses. Indeed, 2014 PA 282 puts in and out of state corporate taxpayers *in the same position* relative to Michigan tax calculations.

There is a contention by some that a discriminatory purpose is reflected in comments made by certain legislators to the media, but as we have said, statements of individual legislators generally do not comprise proper evidence of legislative intent. See *Chmielewski v Xermac, Inc*, 457 Mich 593, 608 n 18; 580 NW2d 817 (1998); *Detroit Bd of Ed v Romulus Bd of Ed*, 227 Mich App 80, 89 n 4; 575 NW2d 90 (1997); *City of Williamston v Wheatfield Twp*, 142 Mich App 714, 719; 370 NW2d 325 (1985), citing *Presque Isle*, 364 Mich at 612. Plaintiffs identify no case law permitting consideration of the statements of individual legislators, particularly statements made to the media, to establish legislative intent. And in any event, the purported media comments of the legislators do not reveal any intent to discriminate against interstate commerce but, instead, are reasonably understood to reflect a desire to ensure a *level playing field* and to avoid giving an unfair advantage to out-of-state businesses. There is no evidence of a discriminatory purpose underlying the enactment of 2014 PA 282.

Third, 2014 PA 282 does not have a discriminatory effect, as it merely precludes both in-state and out-of-state taxpayers from electing the three-factor apportionment formula previously available under the Compact. The federal Constitution does not impose a constitutional restraint on a state's selection of an apportionment formula, and a single-factor formula is presumptively valid. *Moorman*, 437 US at 273, provides a good example. In that case, the Supreme Court rejected a Commerce Clause challenge to Iowa's use of a single-factor formula; the Court did not

agree with the argument that Iowa's single-factor formula was responsible for an alleged duplication of taxation with Illinois, which used a three-factor formula. *Id*. at 276-280. The Court held that, in the absence of implementing legislation from Congress, the Commerce Clause did not require Iowa to compute net income under Illinois's three-factor formula. *Id*. at 277-278. The Court reasoned in part that any disparity in the tax treatment of Iowa and Illinois companies was "not attributable to the Iowa statute. It treats both local and foreign concerns with an even hand; the alleged disparity can only be the consequence of the combined effect of the Iowa *and* Illinois statutes, and Iowa is not responsible for the latter." *Id*. at 277 n 12. The purported "discrimination" against interstate commerce was "simply a way of describing the potential consequences of the use of different formulas by the two States. These consequences, however, could be avoided by the adoption of any uniform rule; the 'discrimination' does not inhere in either State's formula." *Id*.

Plaintiffs have not established that application of the single-factor formula required by 2014 PA 282 produces a discriminatory effect against out-of-state companies. As noted, the single-factor formula applies to *all* taxpayers, both Michigan and out-of-state companies. As with the Iowa statute in *Moorman*, 2014 PA 282 treats local and foreign companies with an equal hand by requiring the single-factor formula for both. Any purported "discrimination" against interstate commerce is, in truth, "simply a way of describing the potential consequences of the use of different formulas by" Michigan and other states. *Id*. Such "consequences, however, could be avoided by the adoption of any uniform rule; the 'discrimination' does not inhere in" the apportionment formula used by Michigan or by other states. *Id*. Plaintiffs have not established that Michigan's single-factor formula discriminates against interstate commerce. 2014 PA 282 does not violate the Commerce Clause.

## H. THE FIRST AMENDMENT

Moving on to the next argument, we conclude that plaintiffs were not denied the right to petition the government under the First Amendment of the federal Constitution or the analogous Michigan provision.

"The right of citizens to petition their government for redress of grievances is specifically guaranteed by the United States and Michigan Constitutions." *Jackson Co Ed Ass'n v Grass Lake Community Sch Bd of Ed*, 95 Mich App 635, 641; 291 NW2d 53 (1979), citing US Const, Am I, and Const 1963, art 1, § 3. But this right "may be circumscribed to the extent necessary to achieve a valid state objective." *Jackson Co Ed* Ass'n, 95 Mich App at 642. The right to petition extends to all departments of the government and includes the right of access to the courts. *Cal Motor Transp Co v Trucking Unlimited*, 404 US 508, 510; 92 S Ct 609; 30 L Ed 2d 642 (1972). See also *In re ALZ*, 247 Mich App 264, 276; 636 NW2d 284 (2001) (noting that the *Cal Motor Transp Co* Court "found a constitutional basis for the right of access to the courts as an aspect of the First Amendment right of petition."); *Mayor of Lansing v Knights of the Ku Klux Klan (After Remand)*, 222 Mich App 637, 647; 564 NW2d 177 (1997) ("The First Amendment right to petition the government has been construed to implicate the right of access to courts for redress of wrongs.").

However, the First Amendment right to advocate does not guarantee that the speech will persuade or that the advocacy will be effective. *Smith v Ark State Hwy Employees, Local 1315,*

441 US 463, 464-465; 99 S Ct 1826; 60 L Ed 2d 360 (1979). That is, "the First Amendment does not impose any affirmative obligation on the government to listen" or respond to the speaker. *Id*. at 465. "Nothing in the First Amendment or in [the United States Supreme] Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Minn State Bd for Community Colleges v Knight*, 465 US 271, 285; 104 S Ct 1058; 79 L Ed 2d 299 (1984). See also *We The People Foundation, Inc v United States*, 376 US App DC 117, 120; 485 F3d 140 (2007) (rejecting the plaintiffs' contention "that they have a right under the First Amendment to receive a government response to or official consideration of a petition for a redress of grievances.").

Further, legislative retraction of the only remedy available to a decision-maker is different from interference with the plaintiffs' abilities to express their views to the decision-maker. Thus, such a retraction does not violate the right to petition the government. *Mich Deferred Presentment Servs Ass'n, Inc v Comm'r of the Office of Fin & Ins Regulation*, 287 Mich App 326, 336; 788 NW2d 842 (2010) (finding no denial of lenders' right of access to courts in a 42 USC 1983 case; "[p]laintiff cannot claim that a violation of 42 USC 1983 occurred simply because a newly enacted statute precluded recovery of certain damages that plaintiff's members had become accustomed to receiving in NSF cases."). Accord: *American Bus Ass'n v Rogoff*, 396 US App DC 353, 360; 649 F3d 734 (2011).

Plaintiffs assert that, in rejecting their argument, the trial court erred in relying on cases addressing the right to be heard by the Legislature; plaintiffs say they are instead contending that they were "thrown out of court." As a result of the enactment of 2014 PA 282, plaintiffs contend that they have been denied the right to petition Treasury and to appeal to a court for a refund of taxes already paid. Plaintiffs characterize this as a classic denial of the right to petition and rely on *Flagg v Detroit*, 715 F3d 165, 174 (CA 6, 2013), to argue that they have established the elements necessary to establish a denial of access to the courts.

In *Flagg*, the court observed that the United States "Supreme Court has recognized a constitutional right of access to the courts, whereby a plaintiff with a nonfrivolous legal claim has the right to bring that claim to a court of law." *Id*. at 173, citing *Christopher v Harbury*, 536 US 403, 415 n 12; 122 S Ct 2179; 153 L Ed 2d 413 (2002). The right to access the courts does not create substantive rights; a plaintiff claiming a denial of access "must have an arguable, nonfrivolous underlying cause of action." *Flagg*, 715 F3d at 173. The *Flagg* court explained:

> Denial of access to the courts claims may be forward-looking or backward-looking. In forward-looking claims, the plaintiff accuses the government of creating or maintaining some frustrating condition that stands between the plaintiff and the courthouse door. The object of the suit is to eliminate the condition, thereby allowing the plaintiff, usually an inmate, to sue on some underlying legal claim. In backward-looking claims, such as those at issue in the instant case, the government is accused of barring the courthouse door by concealing or destroying evidence so that the plaintiff is unable to ever obtain an adequate remedy on the underlying claim. Backward-looking claims are much less established than forward-looking claims, but this Court has recognized them

and the Supreme Court has provided additional guidance as to the elements of a viable backward-looking claim. [*Id*. (citations and quotation marks omitted).]

Relying on *Christopher*, 536 US 403, and *Swekel v City of River Rouge*, 119 F3d 1259 (CA 6, 1997), the *Flagg* court identified the "elements of a backward-looking denial of access claim: (1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the state court; and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable." *Flagg*, 715 F3d at 174 (citations omitted).

Plaintiffs cannot establish the second element identified in *Flagg* for a backward-looking denial of access claim, as there are no obstructive actions by state actors. Although plaintiffs contend that enactment of 2014 PA 282 obstructed plaintiffs' access to the courts by retroactively destroying their right to elect the three-factor apportionment formula under the Compact and preventing them from obtaining a larger tax refund, *Flagg* itself indicates that a backward-looking denial of access claim can only prevail when "the government is accused of barring the courthouse door *by concealing or destroying evidence . . . .*" *Flagg*, 715 F3d at 173 (emphasis added). There is no allegation in these cases that defendant or any state actor has concealed or destroyed evidence. The enactment of 2014 PA 282 retroactively repealing the Compact and requiring the use of a single-factor apportionment formula did not deny plaintiffs access to the courts. In fact, as is obvious, this very litigation demonstrates that plaintiffs have had an ample opportunity to present their arguments to the courts.[12] Legislative elimination of the right to elect the three-factor apportionment formula and any refund on the basis of such an election does not interfere with plaintiffs' abilities to file claims or seek refunds from the courts or Treasury. All that they have been prohibited from doing is seeking a refund under one particular formula. This does not violate the First Amendment. See *American Bus Ass'n*, 396 US App DC at 360; *Mich Deferred Presentment Servs Ass'n, Inc*, 287 Mich App at 336.

## I. MISCELLANEOUS STATE CONSTITUTIONAL PROVISIONS

Despite plaintiffs' protests to the contrary, the enactment of 2014 PA 282 did not violate the Title-Object Clause, the Five-Day Rule, or the Distinct-Statement Clause of the Michigan Constitution.

## 1. TITLE-OBJECT

Const 1963, art 4, § 24 provides:

No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title.

2014 PA 282 contains the following title:

---

[12] Like any other citizen, the First Amendment gave plaintiffs the ability to voice any objection to the Legislature or Governor before 2014 PA 282 was passed and signed into law.

AN ACT to amend 2007 PA 36, entitled "An act to meet deficiencies in state funds by providing for the imposition, levy, computation, collection, assessment, reporting, payment, and enforcement of taxes on certain commercial, business, and financial activities; to prescribe the powers and duties of public officers and state departments; to provide for the inspection of certain taxpayer records; to provide for interest and penalties; to provide exemptions, credits, and refunds; to provide for the disposition of funds; to provide for the interrelation of this act with other acts; and to make appropriations," by amending sections 111, 305, 403, and 433 (MCL 208.1111, 208.1305, 208.1403, and 208.1433), sections 111 and 305 as amended by 2012 PA 605, section 403 as amended by 2008 PA 434, and section 433 as amended by 2007 PA 215, and by adding section 508; and to repeal acts and parts of acts.

This Court has explained:

When assessing a title-object challenge to the constitutionality of a statute, all possible presumptions should be afforded to find constitutionality. An amended title should be construed reasonably, not narrowly and with unnecessary technicality. The goal of the Title-Object Clause is notice, not restriction, of legislation, and it is only violated where the subjects are so diverse in nature that they have no necessary connection. The purpose of the clause is to prevent the Legislature from passing laws not fully understood, and to ensure that both the legislators and the public have proper notice of legislative content and to prevent deceit and subterfuge. [*Lawnichak v Dep't of Treasury*, 214 Mich App 618, 620-621; 543 NW2d 359 (1995) (citations omitted).]

Three types of challenges may be asserted under the Title-Object Clause:

(1) a "title-body" challenge, which indicates that the body exceeds the scope of the title, (2) a "multiple-objects challenge," which indicates that the body embraces more than one object, and (3) a "change of purpose challenge," which indicates that the subject matter of the amendment is not germane to the original purpose. [*Wayne Co Bd of Comm'rs v Wayne Co Airport Auth*, 253 Mich App 144, 185; 658 NW2d 804 (2002).]

All three types of challenges have been raised in these cases.

We agree with the trial court that plaintiffs' multiple-objects challenge is devoid of merit. "The body of the law, and not just its title, must be examined to determine whether the act embraces more than one object. The purpose of the single-object rule is to avoid bringing into one bill diverse subjects that have no necessary connection." *HJ Tucker & Assoc, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 557; 595 NW2d 176 (1999) (citations and quotation marks omitted). "The object of the legislation must be determined by examining the law as enacted, not as originally introduced." *People v Kevorkian*, 447 Mich 436, 456; 527 NW2d 714 (1994). "The object of a law is defined as its general purpose or aim. The constitutional requirement should be construed reasonably and permits a bill enacted into law to include all matters germane to its object, as well as all provisions that directly relate to, carry out,

and implement the principal object." *Gen Motors Corp*, 290 Mich App at 388 (citations and quotation marks omitted). "Legislation should not be invalidated merely because it contains more than one means of attaining its primary object." *City of Livonia v Dep't of Social Servs*, 423 Mich 466, 499; 378 NW2d 402 (1985). "The Legislature may enact new legislation or amend any act to which the subject of the new legislation is germane, auxiliary, or incidental. A statute may authorize the doing of all things that are in furtherance of the general purpose of the act without violating the one-object limitation of art 4, § 24." *Mooahesh v Dep't of Treasury*, 195 Mich App 551, 564; 492 NW2d 246 (1992) (citations and quotation marks omitted), overruled in part on other grounds by *Silverman v Univ of Mich Bd of Regents*, 445 Mich 209 (1994), overruled in part on other grounds by *Parkwood Ltd Dividend Housing Ass'n v State Housing Dev Auth*, 468 Mich 763 (2003).

In *Mooahesh*, this Court quoted from a prior opinion of this Court that summarized the single-object requirement in a case concerning the repeal of a tax:

> It might have been better draftsmanship to have placed the provision concerning the taxability of municipal transportation utilities in the general property tax law (where one might expect to find it) rather than in the home rule act. There is, however, no constitutional requirement that the legislature do a tidy job in legislating. It is perfectly free to enact bits and pieces of legislation in separate acts or to tack them on to existing statutes even though some persons might think that the bits and pieces belong in a particular general statute covering the matter. *The constitutional requirement is satisfied if the bits and pieces so enacted are embraced in the object expressed in the title of the amendatory act and the act being amended.* [*Mooahesh*, 195 Mich App at 564, quoting *Detroit Bd of Street R Comm'rs v Wayne Co*, 18 Mich App 614, 622-623; 171 NW2d 669 (1969) (emphasis added in *Mooahesh*).]

The trial court in *Mooahesh* found that 1988 PA 516, which amended the Individual Income Tax Act to provide that lottery winnings are taxable, violated the Title-Object Clause because it repealed a section of the Lottery Act containing a tax exemption for lottery winnings, which the trial court viewed as an object distinct from the general object of raising revenue. *Mooahesh*, 195 Mich App at 562. This Court reversed that determination, noting that the object of 1988 PA 516 was to raise revenue, *id*. at 565, and that "[t]he object of such an act is necessarily broad-ranging and comprehensive." *Id*. at 566 (citation and quotation marks omitted).

> Revenues can be raised in any number of ways, as history has made obvious. Taxes may be imposed, increased, or rearranged. The object of meeting deficiencies in state funds may reasonably be found to include the repeal of a tax exemption, even if that exemption does not appear in any act specifically devoted to taxation. While it might have been better draftsmanship to have provided for a separate amendment to the Lottery Act, the inclusion of the repeal of the tax exemption provision in an act amending the income tax laws does not render the act in violation of the single-object requirement. [*Id*. (citations, quotation marks, and brackets omitted).]

In rejecting plaintiffs' multiple-objects challenge in the present cases, the trial court discussed *Mooahesh* and reasoned as follows:

> Just as the statute considered in *Mooahesh* had as its general purpose the raising of revenues, so too was the general purpose of [2014] PA 282. And just as it might have been "better draftsmanship" to have provided for a separate amendment repealing § 34 of the Lottery Act, the Legislature in enacting [2014] PA 282 might have been better advised to repeal the Compact provisions in a separate act. But like the choice to amend the [Individual Income Tax Act] and repeal a section of the Lottery Act in one act, the choice to include the repeal of the Compact and amend the MBT in one act is not a violation of the single-object requirement.

The trial court's analysis is convincing. The single object, i.e., the general purpose or aim, of 2014 PA 282 is to amend 2007 PA 36, the MBT Act. This general object was accomplished by amending provisions of the MBT Act and by repealing the Compact. This object is reflected in the title of 2014 PA 282, which references the amendment of sections of 2007 PA 36 and the repeal of acts and parts of acts. Enacting section 1 of 2014 PA 282 provides that the Compact is repealed retroactive to January 1, 2008, and provides that the repeal is intended to express the original intent of the Legislature regarding the application of a section of the MBT Act and to eliminate the apportionment election provision in the Compact. This enacting section thus clarifies that the repeal of the Compact and the concomitant elimination of the apportionment election provision is germane to the object of amending the MBT Act in that it clarifies the appropriate method of apportionment. In other words, the Compact and the MBT Act are related to one another because they each pertain to the method of apportioning the tax base. Thus, 2014 PA 282 does not contain diverse subjects that have no necessary connection. Rather, the repeal of the Compact directly relates to, carries out, and implements the principal object of amending the MBT Act.

"With regard to a title-body challenge, this Court has indicated that the title of an act must express the general purpose or object of the act." *Wayne Co Bd of Comm'rs*, 253 Mich App at 185. "Only the general object and not all the details and incidents of a statute need be indicated in the title." *Ace Tex Corp v Detroit*, 185 Mich App 609, 616; 463 NW2d 166 (1990).

> [I]t is not necessary that a title be an index of all of an act's provisions. It is sufficient that the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose. [*City of Livonia*, 423 Mich at 501 (citations, quotation marks, and ellipsis omitted).]

"Whether a provision is germane to its purpose depends upon its relationship to the object of the act." *Ace Tex Corp*, 185 Mich App at 616. "The test is whether the title gives fair notice to the legislators and the public of the challenged provision. The notice aspect is violated where the subjects are so diverse in nature that they have no necessary connection." *HJ Tucker & Assoc, Inc*, 234 Mich App at 559 (citations and quotation marks omitted).

37

Again, the title of 2014 PA 282 expresses the general purpose or object of amending the MBT Act and references the repeal of acts or parts of acts. Although the title does not use the word "Compact," the title need not be an index of all of the act's provisions. *City of Livonia*, 423 Mich at 501. The repeal of the Compact is germane, auxiliary, or incidental to the amendment of the MBT Act because the elimination of the Compact's election provision is pertinent to the proper method of apportionment of the MBT tax base. The subjects are not so diverse in nature that they lack a necessary connection, and neither the legislators nor the public were deprived of notice of the challenged provision. See also *Mooahesh*, 195 Mich App at 569 ("Despite [1988 PA 516's] failure to state explicitly in the title that the Lottery Act exemption was being repealed, we are able to declare that the subjects are not so diverse as to have 'no necessary connection.' ").

When confronting a change-of-purpose challenge, a court must consider whether the change comprises a mere amendment or extension of the basic purpose of the original bill or instead introduces an entirely new and different subject matter. *Anderson v Oakland Co Clerk*, 419 Mich 313, 328; 353 NW2d 448 (1984). "[T]he test for determining if an amendment or substitute changes a purpose of the bill is whether the subject matter of the amendment or substitute is germane to the original purpose. The test of germaneness is much like the standard for determining whether a bill is limited to a single object." *Kevorkian*, 447 Mich at 461. In *Kevorkian*, 447 Mich at 451-452, the bill as introduced would have created a commission on death and dying to study "voluntary self-termination of life," but the amended bill that became law added criminal penalties for assisting another person in committing suicide. Our Supreme Court rejected a change-of-purpose challenge because the criminal penalties were an interim measure that provided a stable environment while the commission, the Legislature, and the citizenry studied the matter further. *Id*. at 461.

With respect to 2014 PA 282, both the original and amended bill contained provisions related to the MBT tax base. The original purpose of SB 156 was to amend the MBT Act in various ways, including by enacting amendments concerning the gross receipts tax base under the MBT. The change implemented by substitute H-1, as enrolled as 2014 PA 282, did not introduce an entirely new and different subject matter. Instead, it amended or extended the basic purpose of the original bill by retaining the original amendments and adding other provisions, including by retroactively repealing the Compact provisions and expressing legislative intent concerning the use of the single-factor apportionment formula and the elimination of the Compact's election provision. This was germane to the original purpose of amending the MBT Act because, as discussed, the elimination of the Compact's election provision was pertinent to the proper method of apportionment under the MBT Act. Therefore, the repeal of the Compact was sufficiently interconnected with the MBT Act that it fell within the basic purpose of the original bill. This was a far cry from the introduction of an entirely new and different subject matter, as in *Toth v Callaghan*, 995 F Supp 2d 774, 778 (ED Mich, 2014), where a bill that began by allowing emergency managers to reject, modify, or terminate collective bargaining agreements ended up being passed as a bill that excluded graduate student research assistants from the definition of "public employee."

2. THE FIVE DAY RULE

Plaintiffs have also failed to establish a violation of the Five-Day Rule. Const 1963, art 4, § 26 provides, in relevant part: "No bill shall be passed or become a law at any regular session of the legislature until it has been printed or reproduced and in the possession of each house for at least five days."

> The five-day rule and the change of purpose provision were contained in the same article and section of the Constitution of 1908. Const 1908, art 5, § 22. It is clear that the function of the change of purpose provision, both in the Constitution of 1908 and as modified in the Constitution of 1963, is to fulfill the command of the five-day rule.

> Whether measured by the title of the act or by the title and contents of the act, the five-day rule could be rendered ineffective without a change of purpose provision. It is equally clear that a change of purpose rule standing alone would be meaningless, because any time the purpose of a bill was changed it would be a new bill which could be passed immediately. In sum, the alteration of purpose provision operates as an ultimate limitation to prevent evasion of the five-day rule. [*Anderson*, 419 Mich at 330 (footnotes omitted).]

"A long history underscores an intent through these requirements to preclude last-minute, hasty legislation and to provide notice to the public of legislation under consideration irrespective of legislative merit." *Id*. at 329.

The legislative record establishes that SB 156 was before each house for at least five days. And as discussed earlier, there was no change of the original bill's purpose. Accordingly, no violation of the Five-Day Rule occurred.

### 3. DISTINCT-STATEMENT CLAUSE

Finally, plaintiffs have not established a violation of the Distinct-Statement Clause. Const 1963, art 4, § 32, provides: "Every law which imposes, continues or revives a tax shall distinctly state the tax." The purpose of this provision "is to prevent the Legislature from being deceived in regard to any measure for levying taxes, and from furnishing money that might by some indirection be used for objects not approved by the Legislature." *Dawson v Secretary of State*, 274 Mich App 723, 747; 739 NW2d 339 (2007) (citations and quotation marks omitted). The Distinct-Statement Clause is violated if a statute imposes an obscure or deceitful tax, *Dukesherer Farms, Inc v Ball*, 73 Mich App 212, 221; 251 NW2d 278 (1977), aff'd 405 Mich 1 (1979), such as when a tax is disguised as a regulatory fee, *Dawson*, 274 Mich App at 740. 2014 PA 282 does not impose or revive any tax but clarifies the Legislature's intent regarding the method of apportionment of the MBT's tax base. There is nothing deceptive about the legislation. It is clear from the title and body of 2014 PA 282 that it is amending the MBT Act. There has been no violation of the Distinct-Statement Clause.

### J. DISCOVERY

"[S]ummary disposition is premature if granted before discovery on a disputed issue is complete. However, summary disposition is appropriate if there is no fair chance that further discovery will result in factual support for the party opposing the motion." *Mackey v Dep't of*

*Corrections*, 205 Mich App 330, 333; 517 NW2d 303 (1994) (citation omitted). As alluded to earlier, plaintiffs wanted to engage in discovery regarding Michigan's participation in the Commission since 2008, which according to plaintiffs would establish that the Compact was not in fact repealed retroactively beginning on January 1, 2008, because Michigan in fact participated in the Commission during the relevant time.

But as we also alluded to earlier, discovery on any of these issues would not produce relevant information. Setting aside plaintiffs failure to cite authority regarding the relevancy of Michigan's participation in the Commission, more to the point is the fact that the issues raised concern statutory interpretation and constitutional challenges. And those issues are, as we said before, matters of law. *Elba Twp*, 493 Mich at 277-278; see also *Hunter*, 484 Mich at 257; *GMAC*, 286 Mich App at 380. How and to what extent the state participated in the Commission has no bearing on the meaning or effect of the words used in the statute or the state and federal Constitutions. Accordingly, discovery on this issue did not stand a fair chance of providing support for plaintiffs' position.

Discovery was also not required regarding the extent of plaintiffs' reliance on the Compact election provision. As a matter of law taxpayers do "not have a vested right in a tax statute or in the continuance of any tax law," *Walker*, 445 Mich at 703, while states have wide latitude in the selection of apportionment methodologies, *Moorman*, 437 US at 274. And a taxpayer's reliance on a particular tax law is insufficient to establish a due process violation because "[t]ax legislation is not a promise, and a taxpayer has no vested right in" a tax statute. *Carlton*, 512 US at 33. Therefore, plaintiffs have not established a fair chance that discovery on the extent of their reliance on the Compact apportionment method would have led to any relevant support for their position.

Plaintiffs also incorrectly contend that discovery should have been held regarding the Legislature's intent in enacting 2014 PA 282, including internal communications regarding the purpose of the legislation. But as we previously made clear, statements of individual legislators generally do not comprise proper evidence of legislative intent. See *Chmielewski*, 457 Mich at 608 n 18; *Detroit Bd of Ed*, 227 Mich App at 89 n 4; *City of Williamston*, 142 Mich App at 719, citing *Presque Isle*, 364 Mich at 612. Hence, discovery on this issue would not have had a fair chance of producing support for plaintiffs' position.

Affirmed. No costs, an issue of public importance being involved. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Patrick M. Meter

40