# STATE OF MICHIGAN

# COURT OF APPEALS

SOLO CUP OPERATING CORPORATION,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

UNPUBLISHED
December 20, 2016

No. 327766
Court of Claims
LC No. 14-000014-MT

---

SOLO CUP OPERATING CORPORATION,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

No. 332891
Court of Claims
LC No. 15-000121-MT

---

Before: M. J. KELLY, P.J., and O'CONNELL and BECKERING, JJ.

PER CURIAM.

These consolidated tax cases involve the Michigan business tax (MBT) liability of plaintiff Solo Cup Operating Corporation, an out-of-state corporation, for the 2009 through 2011 tax years. In Docket No. 327766 regarding the 2009 tax year, plaintiff appeals the Court of Claims' opinion and order granting summary disposition to defendant Department of Treasury under MCR 2.116(C)(4) (lack of subject matter jurisdiction). In Docket No. 332891 pertaining to the 2009 through 2011 tax years, plaintiff appeals the Court of Claims' final judgment granting partial summary disposition for defendant under MCR 2.116(I)(1) (pleadings compel judgment as a matter of law). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

For the tax years at issue in both appeals, plaintiff timely filed its MBT returns electing to use a three-factor apportionment formula to calculate its tax base under Article IV of the Multistate Tax Compact (Compact), as incorporated into Michigan law under then-existing MCL

205.581.  Defendant disallowed plaintiff's election of this methodology in each of these tax years based on MCL 208.1301 of the Michigan Business Tax Act (MBTA), which mandated use of a sales-factor apportionment formula.[1]

Litigation between the parties ensued and, in the interim, the Michigan Supreme Court decided *IBM v Dep't of Treasury*, 496 Mich 642, 657-659; 852 NW2d 865 (2014), in which the Court held that the MBTA did not repeal the Compact's three-factor apportionment formula and that out-of-state taxpayers, like plaintiff, were eligible to use the formula for the 2008 through 2011 tax years.  Shortly thereafter, the Legislature passed 2014 PA 282 (PA 282), which retroactively repealed the Compact and required all MBT taxpayers to apportion their tax base using the MBTA's sales-factor apportionment formula beginning January 1, 2008.  2014 PA 282.  This Court upheld PA 282 against multiple constitutional challenges in *Gillette Commercial Operations North America & Subsidiaries v Dep't of Treasury*, 312 Mich App 394; 878 NW2d 891 (2015).  Notwithstanding the *Gillette* Court's holding, plaintiff's substantive claims for a refund in Docket No. 332891 are predicated on the purported unconstitutionality of PA 282.  Plaintiff's appeal in Docket No. 327766 is predicated on an alleged error in the determination that the court lacked subject-matter jurisdiction regarding the 2009 tax year.

## A.  DOCKET NO. 327766

For the 2009 tax year, plaintiff timely filed its Michigan Business Tax (MBT) return, reflecting an overpayment of $58,676 and requesting that this amount be carried forward to the next tax year.  This overpayment resulted from plaintiff's use of the Compact's three-factor apportionment formula.

As noted, defendant rejected plaintiff's apportionment method and issued to plaintiff an MBT Annual Return Notice of Additional Tax Due (hereinafter, Initial Notice) for the 2009 tax year, assessing plaintiff an additional MBT tax liability of $52,248, including interest and

---

[1] Articles III(1) and IV of the Compact allowed a business to elect to apportion income using an equally-weighted, three-factor apportionment formula based on a business's sales, property, and payroll.  See *Gillette Commercial Operations North America & Subsidiaries v Dep't of Treasury*, 312 Mich App 394, 402; 878 NW2d 891 (2015).  Effective January 1, 2008, the Legislature enacted the MBTA, MCL 208.1101 et seq., which provided that "each tax base established under this act *shall* be apportioned in accordance with this chapter."  MCL 208.1301(1) (emphasis added).  MCL 208.1301(2) of the MBTA provided for an apportionment formula based solely on a sales factor and made no mention of the three-factor apportionment formula.  Effective May 26, 2011, the Legislature amended the Compact's election provision, MCL 205.581, art III and IV, to require, beginning January 1, 2011, taxpayers subject to the MBTA "to apportion and allocate in accordance with the provisions of [the MBTA] and shall not apportion or allocate in accordance with article IV [of the Compact]."  2011 PA 40 (PA 40).  As a result of the enactment of the MBTA and PA 40, a legal question existed whether the Legislature had intended for the MBTA to repeal the Compact's election provision or whether, for tax years before May 2011, taxpayers could still utilize the Compact's election.

-2-

penalties. Plaintiff submitted a Letter of Disagreement in response to the Initial Notice, but its response was untimely. Consequently, defendant issued to plaintiff an Intent to Assess Bill for Taxes Due, to which plaintiff did not respond. Ultimately, defendant issued to plaintiff a Final Bill For Taxes Due (hereinafter Final Assessment) in November 2012. Plaintiff did not appeal the decision to the Court of Claims until over a year later in January 2014, after it had received defendant's October 2013 response to plaintiff's Letter of Disagreement. In its complaint, plaintiff alleged that it had "timely filed an MBT return for the Year in Issue, reflecting an overpayment of MBT in the amount of $58,676 and requesting that such overpayment be carried forward to the next tax period."

Defendant answered plaintiff's complaint and moved for summary disposition under MCR 2.116(C)(4), alleging that the Court of Claims lacked subject-matter jurisdiction. The Court of Claims agreed, finding that plaintiff failed to file its claim of appeal within 90 days of the Final Assessment and pay the tax under protest before appeal, which the court concluded was required by MCL 205.22(1) and (2). The Court of Claims' opinion and order, issued February 18, 2015, however, did not have the opportunity to consider a new MBT Annual Return Notice of Additional Tax Due (hereinafter Superseding Notice) and Final Bill for Taxes Due Corrected (hereinafter Corrected Final Assessment) for the 2009 tax year, which defendant had issued to plaintiff three days before the court issued its opinion and order.

B. DOCKET NO. 332891

Plaintiff paid under protest the amount due under the 2009 Superseding Notice and Corrected Final Assessment, as well as the amounts due under the final assessments for the 2010 and 2011 tax years. As in 2009, plaintiff had elected to apportion its Michigan income using the three-factor apportionment formula under Article IV of the Compact and defendant had denied plaintiff's election of this methodology for both the 2010 and 2011 tax years.

In May 2015, plaintiff filed a three-count complaint for a refund regarding its MBT liability for the 2009 through 2011 tax years, specifically challenging the 2009 Corrected Final Assessment that plaintiff had not challenged in the prior litigation. Count I alleged that defendant's rejection of plaintiff's election of the three-factor apportionment formula violated the Compact and Michigan law; Count II alleged that defendant's denial of the same violated the Contracts Clause and Due Process Clause of the United States and Michigan Constitutions and the Commerce Clause of the United States Constitution; and Count III requested abatement of penalties for the years in issue.

In June 2015, the Court of Claims sua sponte granted defendant partial summary disposition as to Counts I and II under MCR 2.116(I)(1). The court reasoned that PA 282, in which the Legislature retroactively repealed the Compact and which the Court of Claims had previously held withstood constitutional challenge, applies and negated plaintiff's claim for relief. After granting plaintiff partial relief as to its abatement of penalties claim, the Court of Claims entered a final judgment that plaintiff now appeals only as to Counts I and II.

-3-

## II. STANDARD OF REVIEW

This Court reviews a summary disposition motion under MCR 2.116(C)(4) and (I)(1) de novo. *Toaz v Dep't of Treasury*, 280 Mich App 457, 459; 760 NW2d 325 (2008); *Sobiecki v Dep't of Corrections*, 271 Mich App 139, 141; 721 NW2d 229 (2006). Judgment under MCR 2.116(C)(4) is proper if the court lacks subject-matter jurisdiction over the matter at issue. Further, a court shall render judgment without delay under MCR 2.116(I)(1) "[i]f the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact . . . ." However, "appellate courts will sua sponte refuse to hear cases that they do not have the power to decide, including cases that are moot[.]" *People v Richmond*, 486 Mich 29, 35; 782 NW2d 187 (2010). Whether a case is moot is a question this Court reviews de novo. See *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 254; 833 NW2d 331 (2013).

## III. DOCKET NO. 327766

In Docket No. 327766, plaintiff argues that the original 2009 Final Assessment is "no longer legally effective" because defendant's Superseding Notice and Corrected Final Assessment rescinded the Final Assessment. It follows, according to plaintiff, that the Final Assessment "cannot possibly act as a bar to this action[.]"

We agree with plaintiff that the Final Assessment at issue in Docket No. 327766 is legally void. In February 2015, before the Court of Claims issued its opinion and order in this case, but apparently unbeknownst to the court, plaintiff received a Superseding Notice indicating that "[t]his notice *supersedes* prior [MBT] notifications for [the 2009 tax year]" (emphasis added). The notice further indicated that the Final Assessment would be corrected to reflect the changes. Plaintiff also received a Corrected Final Assessment that was backdated to the date of the original Final Assessment, reflecting the alleged correct amount due. Thus, the Superseding Notice and the Corrected Final Assessment dictate that the original Final Assessment is no longer legally operative.

We disagree with plaintiff's assertion, however, that the rescission of the original Final Assessment grants the Court of Claims subject-matter jurisdiction over the dispute filed in Docket No. 327766. "[T]his Court does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before it." *Richmond*, 486 Mich at 34 (quotation marks and citation omitted). "[A] moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, . . . or a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy." *Id*. at 34-35 (quotation marks and citation omitted).

Here, as a result of the Superseding Notice and Corrected Final Assessment, plaintiff's challenge in Docket No. 327766 to the original Final Assessment is essentially a challenge to a now non-existent tax assessment that effectively denied plaintiff's claim for a refund. Because the Final Assessment is void, there is no controversy to resolve regarding the propriety of that assessment and no relief to be had from its (now void) imposition. We will not resolve a dispute that does not rest upon existing facts; when an event occurs that makes it impossible to grant the relief requested, the issue is moot. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355,

386; 803 NW2d 698 (2010). We conclude that this matter is moot and non-justiciable. Given that this appeal is moot, we do not consider whether the Court of Claims erred by dismissing this case for lack of subject-matter jurisdiction. As noted below, however, plaintiff's substantive appellate issues are preserved for purposes of appeal in Docket No. 332891, associated with the Superseding Notice and Corrected Final Assessment.

IV. DOCKET NO. 332891

In Docket No. 332891, plaintiff argues that the Court of Claims erred by dismissing its constitutional claims as to the 2009 through 2011 tax years under MCR 2.116(I)(1). Plaintiff concedes that this Court considered and rejected its arguments in *Gillette*, 312 Mich App at 407-447. Indeed, the *Gillette* Court concluded that the Compact was not a binding interstate contract and, therefore, PA 282's retroactive repeal of the Compact did not violate the Contract Clause and further, that the retroactive repeal of the Compact did not: (1) violate due process because taxpayers have no vested interest in the continuation of the tax laws and the Legislature had a legitimate purpose in enacting PA 282; (2) violate the Commerce Clause because PA 282 is not facially discriminatory and no discriminatory purpose or effect is inherent in PA 282; (3) violate the Separation of Powers Clause because PA 282 did not overrule a judgment of a court; or (4) violate various constitutional provisions of the Michigan Constitution pertaining to the legislative process. *Gillette*, 312 Mich App at 409-410, 414, 431-433, 428, 444-447. Notwithstanding that *Gillette* is binding precedent, plaintiff argues that *Gillette* was wrongly decided and asks this Court to issue a decision disagreeing with *Gillette* so that a conflict panel may be convened. MCR 7.215(J)(2) and (3). For the reasons that follow, we decline to do so.

A. THE COMPACT AS A CONTRACT

Plaintiff first argues that *Gillette* wrongly concluded that the Compact is not a binding contract, maintaining that this conclusion is contrary to *United States Steel Corp v Multistate Tax Comm'n*, 434 US 452; 98 S Ct 799; 54 L Ed 2d 682 (1978), and makes Michigan an outlier with respect to the status of the Compact as a contract. Plaintiff further maintains that *Gillette* is wrong because the Legislature's enactment of the Compact evinces an intent to be bound by its provisions.

While it is a general principle of Michigan jurisprudence that one legislature may not bind another, the Legislature may in certain limited circumstances contractually bind a subsequent legislature. *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich 295, 319-320; 806 NW2d 603 (2011). This authority is subject to strict limitations and courts will not construe laws as contracts by implication because to do so would be to severely limit the Legislature's sovereign authority to enact laws in the future. *Id*. at 320. Consequently, a "strong presumption [exists in Michigan law] that statutes do not create contractual rights." *Studier v Mich Pub Sch Employees Retirement Bd*, 472 Mich 642, 661; 698 NW2d 350 (2005). The proponent of the legislative creation of a contract must establish that the statutory language is plain and "susceptible of no other reasonable construction than that the Legislature intended to be bound to a contract." *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich at 320-321 (quotation marks and citation omitted). "That is, [b]efore a statute, particularly one relating to taxation, should be held to be irrepealable or not subject to amendment, an intent not to repeal or amend must be so directly and

-5-

unmistakably expressed as to leave no reason for doubt. Otherwise the intent is not plainly expressed." *Id*. at 321 (quotation marks and citation omitted). Relatedly, Const 1963, art 9, § 2 provides, "The power of taxation shall never be surrendered, suspended or contracted away."

The *Gillette* panel squarely rejected plaintiff's claim that the Compact is a contract, stating:

> *There are no words in the Compact, as adopted by the Legislature under 1969 PA 343, that indicate that the state intended to be bound to the Compact, and specifically to Article III(1).* Therefore, the presumption must be that the state did not surrender its legislative power to require use of a particular apportionment formula. Such interpretation comports with the Supreme Court's recognition of "the basic principle[] that the States have wide latitude in the selection of apportionment formulas . . . ." *Moorman* [*Mfg Co v Bair*], 437 US [267,] 274[; 98 S Ct 2340; 57 L Ed 2d 197 (1978)]. This interpretation is also consistent with the Court's recent acknowledgement that states "do not easily cede their sovereign powers . . . ." *Tarrant* [*Regional Water Dist v Herrmann*], [569 US ___, ___;] 133 S Ct [2120,] 2132[; 186 L Ed 2d 153 (2013)]. *Because there is no clear indication under MCL 205.581 that the state contracted away its ability to either select an apportionment formula that differs from the Compact*, or to repeal the Compact altogether, the Court concludes that no contractual obligation was created by enactment of 1969 PA 343 that would prohibit the enactment of [2014] PA 282. [*Gillette*, 312 Mich App at 409-410 (emphasis added).]

We agree with the *Gillette* panel's analysis. Nothing in former MCL 205.581, demonstrates an intent to create a binding contract that is so unmistakable as to leave no other reasonable construction. There is no express statutory language providing for the execution of a written contract on behalf of the State, nor did the Legislature covenant not to amend the legislation. See *Studier*, 472 Mich at 662-663.

Plaintiff, however, relies on the first sentence of former MCL 205.581, which states that the Compact "is enacted into law and entered into with all jurisdictions legally joining therein." Plaintiff asserts that the phrase "entered into" would be mere surplusage if the Compact is not interpreted to be a contract. However, the phrase "entered into" in no way expresses the creation of a promise on behalf of a member state, including terms of mutual assent, mutual obligation, and consideration, as contracts are traditionally understood in the law. Moreover, the terms of the Compact itself suggest that it is not, in fact, a binding contract. Mainly, former MCL 205.581, art X(2), provides that a member state may withdraw from the compact at any time. Because the State could exercise, in its sole discretion, when to withdraw from the compact, any of its supposed "obligations" under the Compact were illusory. See Restatement Contracts, 2d, § 77, comment a, p 195 ("Illusory promises. Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise.").

In further support of its decision that the Compact is not a binding agreement on the State, *Gillette* applied the "three classic indicia of a binding interstate compact," finding that the Compact was not a "binding interstate compact" because it did not create a regulatory body, did

-6-

not require reciprocal action to obtain benefits, and could be modified unilaterally by member states. *Gillette*, 312 Mich App at 410-414. Plaintiff also challenges this reasoning, arguing that this holding is contrary to *US Steel Corp*, 434 US 452, in which the Court allegedly held that the Compact is a "binding interstate compact." However, contrary to plaintiff's assertion, *US Steel Corp* did not conclude that the Compact is a *binding* contractual agreement. In fact, its analysis suggests otherwise, as *Gillette* recognized when it quoted the language from *US Steel Corp.* " 'each State retains complete freedom [under the Compact] to adopt or reject the rules and regulations of the Commission.' " *Gillette*, 312 Mich App at 412, quoting *US Steel Corp*, 434 US at 473 (emphasis added in *Gillette*). Indeed, the focus of the decision in *United States Steel* was whether the Compact violated the Compact Clause[2] of the United States Constitution by elevating states' powers to the detriment of federal supremacy, not whether the Compact formed a contractually binding agreement between member states. To the extent *US Steel* referred to the Compact as a "compact," it never characterized it as a binding agreement or as a contract, as that term is understood under traditional principles of contract law.

Relatedly, plaintiff's claim that *Gillette*'s conclusion that the Compact is a non-binding agreement makes Michigan an outlier is not supportable. Member states have enacted legislation that deviates from the Compact, effectively altering its terms while remaining members. See, e.g., Minn Stat 290.191; Or Rev Stat 314.650; Idaho Code 63-3027(i); Tex Tax Code Ann 171.106(a); Col Rev Stat 24-60-1301 & 1308; Utah Code Ann 59-7-311. Moreover, members have supported the interpretation that the Compact is not, in fact, a binding contract. *IBM*, 496 Mich at 682 n 7 (2014) (MCCORMACK, J., dissenting) ("It bears emphasizing that Compact members have not only refrained from bringing legal action against one another for deviating from Articles III and IV, they have endorsed the Commissioner's interpretation of the Compact . . . [as a non-] binding contract."). Moreover, Michigan is not the only jurisdiction to have concluded that the Compact does not form a binding contract. See *Kimberly-Clark Corp v Comm'r of Revenue*, 880 NW2d 844 (Minn, 2016); *Health Net, Inc v Dep't of Revenue*, 22 OTR 128 (Or TC, 2015).

Finally, plaintiff argues that defendant violated former MCL 205.581, art X(2), of the Compact, which provides that "[a]ny party state may withdraw from this compact by enacting a statute repealing the same. No withdrawal shall affect any liability already incurred by or chargeable to a party state prior to the time of such withdrawal." According to plaintiff, this provision prohibits retroactive withdrawal from the Compact. Plaintiff explains that because the Compact is a binding contract, the State is prohibited under Article X(2) from retroactively repealing the Compact. It follows, according to plaintiff, that PA 282 irreconcilably conflicts with the Compact by retroactively repealing it and PA 282 is, thus, unlawful. This argument is based on two erroneous assumptions.

---

[2] The Compact Clause of Art I, § 10, cl 3 of the United States Constitution provides: "No State shall, without the Consent of Congress, . . .enter into any Agreement or Compact with another State, or with a foreign Power . . . ."

-7-

First, plaintiff assumes that the Compact is a contract and that the State, therefore, is bound by its provisions. As we have already explained, the Compact does not form a binding contractual agreement. Therefore, even assuming former MCL 205.581, art X, prohibited retroactive repeal of the Compact, the State cannot be said to have violated former MCL 205.581, art X, because, absent a binding contractual obligation, the alleged "prohibition" is merely aspirational.

Second, plaintiff presumes that the second sentence of former MCL 205.581, art X(2), prohibits retroactive repeal. However, the second sentence relating to liabilities already incurred by or chargeable to a party state is a statement describing a limited consequence of the unconditional right to withdraw from the Compact. It does not expressly prohibit a member state from retroactively repealing the Compact. And, when read in context of the entire Compact, the second sentence refers to liabilities or charges owed to the Commission that have already been incurred by members states, not to taxpayers' liabilities or claims for a refund. See former MCL 205.581, art VI(4), (requiring member states to appropriate funds to the commission for its budget), and art VIII(2) (granting the commission authority to charge member states for the performance of an audit).[3] Consequently, article X(2) does not prohibit retroactive repeal of the Compact. *Gillette* correctly concluded that the Compact is not a binding contract.

## B. CONTRACT CLAUSE

Plaintiff next claims that PA 282 violates the Contract Clause of the United States and Michigan Constitutions. "The United States Constitution provides that '[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . .,' US Const, art I, § 10, cl 1, while our state Constitution similarly provides that '[n]o . . . law impairing the obligation of contract shall be enacted,' Const 1963, art 1, § 10." *Gillette*, 312 Mich App at 407. The Contract Clause has not been interpreted as an absolute bar against the impairment of contracts, but instead prohibits laws that "operate[] as a substantial impairment of a contractual relationship." *Allied Structural Steel Co v Spannaus*, 438 US 234, 244; 98 S Ct 2716; 57 L Ed 2d 727 (1978). This inquiry involves a three-part analysis: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp v Romein*, 503 US 181, 186; 112 S Ct 1105; 117 L Ed 2d 328 (1992). If the impairment is deemed substantial, then it must be the result of a legitimate public purpose that is carried out by reasonable means. *Blue Cross & Blue Shield v Milliken*, 422 Mich 1, 21-22; 367 NW2d 1 (1985).

In *Gillette*, the Court found that because the Compact did not form a contract, there can be no violation of the Contract Clause. *Gillette*, 312 Mich App at 410. The Court then found that even if the Compact did form a contract, no substantial impairment of the alleged contract

---

[3] Even if "already incurred liabilities" could be construed to include amounts the State owed taxpayers before legislative withdrawal so as to prohibit retroactive withdrawal, the effect of such a conclusion would be immaterial. This is because the Compact is not a binding contract and, thus, the State is not bound by the terms of the Compact.

occurred because PA 282 did not interfere with "plaintiff's reasonably expected contractual benefits." *Id*. at 413-414. The Court stated:

> Given the fact that these taxpayers have no vested interest in the continuation of a tax law, and that tax law is one of the more highly regulated areas in the law, it is difficult to see what reasonable expectation was actually interfered with. See, e.g., *All Star, Inc v Georgia Atlanta Amusements, LLC*, 332 Ga App 1, 9; 770 SE2d 22 (2015), and cases cited therein. This is particularly so when considering Treasury's position on this issue over the past five years or so. [*Gillette*, 312 Mich App at 414.]

Plaintiff first argues that *Gillette* erred by concluding that the Compact is not a contract, referring to its previous argument. However, we have already concluded that *Gillette* correctly concluded that the Compact is not a contract. Plaintiff also suggests that *Gillette*'s Contract Clause analysis was erroneous because "protecting the public fisc" is not a legitimate reason for a substantial impairment of contract. However, the *Gillette* Court did not predicate its Contract Clause analysis on this reasoning. Instead, it found that even assuming the Compact formed a contract, PA 282's repeal of the Compact was not a substantial impairment because taxpayers have no vested interest in the continuation of tax laws. *Gillette*, 312 Mich App at 413-414. Plaintiff does not expressly address this rationale of the *Gillette* opinion and does not otherwise explain why *Gillette*'s analysis is wrong. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Innovation Ventures, LLC v Liquid Mfg, LLC*, 499 Mich 491, 518; __ NW2d __ (2016) (quotation marks and citation omitted). Plaintiff has failed to show that *Gillette*'s Contract Clause analysis is erroneous.

## C. DUE PROCESS CLAUSE

Plaintiff next argues that the retroactive repeal of the Compact violates the Due Process Clauses of the United States and Michigan Constitutions. The Fourteenth Amendment of the United States Constitution and Const 1963, art 1, § 17 guarantee that no state shall deprive any person of "life, liberty or property, without due process of law." Taxpayers do not have a vested right in the tax laws that is protected by due process. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App at 370-371. This is because the Due Process Clause protects actual property rights, such as those in which legal or equitable title is vested; a taxpayer has no vested property right in tax laws or their continuance. *Id*. Nonetheless, retroactive tax legislation must meet the rational basis test to satisfy due process: the legislation must serve a legitimate purpose and be furthered by a rational means. *Id*. at 371-372; *United States v Carlton*, 512 US 26, 30-31, 33; 114 S Ct 2018; 129 L Ed 2d 22 (1994). "A legislature's action to mend a leak in the public treasury or tax revenue—whether created by poor drafting of legislation in the first instance or by a judicial decision—with retroactive legislation has almost universally been recognized as 'rationally related to a legitimate legislative purpose.' " *Gen Motors Corp*, 290 Mich App at 373, quoting *Carlton*, 512 US at 35. However, the period of retroactivity is relevant to whether the means employed are rational to meet the legitimate purpose. See *Carlton*, 512 US at 32-33.

Relying on United States Supreme Court precedent, as well as cases from the Michigan Supreme Court and this Court, *Gillette*, 312 Mich App at 414-421, concluded that taxpayers have no vested rights in the tax laws or continuance of the tax laws protected by the Due Process Clause. In support, the Court recognized that vested rights are legal rights to the enjoyment of property, and not a mere expectation in the continuance of a law. *Id*. at 419, 421. Therefore, the Court held that the plaintiffs had no vested interest protected by Due Process in the continuation of the Compact. *Id*. at 421. The Court further found that the Legislature had a legitimate purpose in enacting PA 282: to correct a misinterpretation[4] of the prior statute and to eliminate revenue loss that would stem from that misinterpretation. *Id*. at 421-422. The panel also found that the period of retroactivity was comparable to the periods of retroactivity for other legislation that had been upheld, *id*. at 420 (noting that a five and seven-year period had been upheld), and specifically rejected plaintiff's "bait and switch" argument, *id*. at 424-425, i.e., the argument that "Michigan engaged in a 'bait and switch' by enticing foreign companies to engage in commerce in Michigan by providing the three-factor apportionment formula and then retroactively taking away this apportionment method," *id*. at 424.

Again, plaintiff does not, for the most part, explain why it thinks the *Gillette* decision was wrongly decided, but merely parrots back arguments that *Gillette* already rejected or makes arguments without connecting them to *Gillette*. It is not this Court's role to develop or provide the rationale for an appellant's arguments on appeal. *Innovation Ventures, LLC*, 499 Mich at 518. To the extent that plaintiff does make arguments specifically challenging the *Gillette* panel's rationale, we are unpersuaded that *Gillette*'s reasoning was wrong.

Plaintiff, for example, argues that *Gillette* wrongly concluded that PA 282's repeal of the Compact served a legitimate purpose to protect state revenues. According to plaintiff, the protection of state revenues is not a valid legitimate purpose because the retention of unlawfully collected taxes is not legitimate and is "constitutionally incomplete and short-sighted." Plaintiff cites no authority in support of this contention and we deem this claim abandoned. *Innovation Ventures, LLC*, 499 Mich at 518.[5]

Plaintiff also challenges *Gillette*'s conclusion that PA 282's six-and–a-half-year period of retroactivity is modest. Plaintiff explains that United States Supreme Court precedent indicates that a retroactive period of six years is unlawful, noting that the periods of retroactivity considered by the Court ranged from five months to two years. Plaintiff misses, however, that

---

[4] I.e., our Supreme Court's holding in *IBM*, 496 Mich at 659, that 2011 PA 40 created a window wherein certain taxpayers could still use the three-factor apportionment option available under Article IV of the Compact. *Gillette*, 312 Mich App at 406.

[5] In any case, we note that plaintiff's claim ignores that the Legislature's purpose was multi-faceted and not simply to protect revenues, but to also correct a misinterpretation of the law that would have led to the loss of revenue. *Gillette* cites United States Supreme Court precedent in support of its conclusion that legislative action is legitimate if it seeks to both correct a misinterpretation of a statute *and* eliminate a revenue loss stemming from that misinterpretation. See *Gillette*, 312 Mich App at 422, citing *Carlton*, 512 US at 32.

the Supreme Court has never articulated a bright line rule in this regard—just because the periods the Court considered reasonable were shorter than the period in the instant case does not mean that a longer period cannot pass constitutional muster.  Plaintiff also says that *Gillette* erred by relying on *Gen Motors Corp* and *GMAC LLC v Dep't of Treasury*, 286 Mich App 365; 781 NW2d 310 (2009), in which retroactive tax legislation periods of five and seven years were upheld, because those cases did not involve settled expectations based on a binding interstate compact.  See *Gen Motors Corp*, 290 Mich App at 376-377; *GMAC*, 286 Mich App at 378.  This distinction is inapposite; contrary to plaintiff's wish, the Compact is not a binding contract and it gave plaintiff no settled expectations.

Finally, plaintiff claims that the *Gillette* holding guts the Due Process Clause leaving "<u>no</u> due process protections for taxpayers from retroactive legislation."  Plaintiff warns that this result will stem from the Court's recognition that the taxpayers' due process claim must fail because taxpayers have no vested rights in a tax refund based on the continuance of tax laws.  This argument ignores that *Gillette*'s holding was not based solely on such a conclusion.  Rather, *Gillette* recognized, and applied, the test of due process for retroactive tax legislation: the legislation must be enacted for a legitimate legislative purpose and be furthered by a rational means.  This is the same test applied in *Carlton*, 512 US at 33, which also recognized that taxpayers have no vested right in the tax laws.  Thus, plaintiff's warning is unfounded and *Gillette* is not, contrary to plaintiff's assertion, directly at odds with the United States Supreme Court's decision in *Carlton*.  Plaintiff has not demonstrated that *Gillette*'s due process analysis is wrong.

## D.  COMMERCE CLAUSE

Plaintiff next claims that PA 282 violates the Commerce Clause of the United States Constitution because it facially discriminates against interstate commerce.  *Gillette* reached the opposite conclusion, holding that PA 282 did not violate the Commerce Clause because it was facially neutral and did not otherwise have a discriminatory purpose or effect.  *Gillette*, 312 Mich App at 431-432.  It noted:

> The United States Supreme Court . . . has established a four-pronged test to determine whether a state tax violates the Commerce Clause.  *Complete Auto Transit, Inc v Brady*, 430 US 274, 279; 97 S Ct 1076; 51 L Ed 2d 326 (1977).  A state tax will withstand scrutiny under a Commerce Clause challenge and will be held to be constitutionally valid under the four-pronged test articulated in *Complete Auto* provided that the tax: (1) is applied to an activity having a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state. [*Caterpillar, Inc v Dep't of Treasury*, 440 Mich 400, 415; 488 NW2d 182 (1992).]

> Only the third prong is challenged in this case; plaintiffs contend that 2014 PA 282 discriminates against interstate commerce.  "A tax violates the third prong of the *Complete Auto* test if it is facially discriminatory, has a discriminatory purpose, or has the effect of unduly burdening interstate commerce."  *Caterpillar*,

440 Mich at 422, citing *Amerada Hess Corp v NJ Dep't of Treasury*, 490 US 66, 75; 109 S Ct 1617; 104 L Ed 2d 58 (1989). [*Gillette*, 312 Mich App at 430-431.]

Under this test, *Gillette* found that PA 282 (1) is not facially discriminatory because it does not, "on its face, create any classification based on a taxpayer's state of origin or the location of commerce[;]" (2) does not have a discriminatory purpose because "there is no evidence of a legislative intent to give a benefit to local industry that is denied to out-of-state businesses[;]" and (3) does not have a discriminatory effect because it "precludes both instate and out-of-state taxpayers from electing the three-factor apportionment formula previously available under the Compact." *Gillette*, 312 Mich App at 431-433.

First, regarding *Gillette*'s conclusion that PA 282 is facially neutral, plaintiff does not specifically explain why it thinks *Gillette*'s reasoning is wrong. Again, "[i]t is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Innovation Ventures, LLC*, 499 Mich at 518 (quotation marks and citation). Plaintiff's claim is abandoned.[6] *Id*.

Second, regarding *Gillette*'s holding that PA 282 does not have a discriminatory purpose or effect, the panel rejected the same arguments that plaintiff now raises on appeal and plaintiff fails to develop cogent and compelling reasons why the *Gillette* decision was in error. *Gillette*, 312 Mich App at 432. For example, *Gillette* rejected the taxpayers' assertions that the statements of a legislator show a discriminatory purpose because such statements are not evidence of legislative intent. Like the taxpayers in *Gillette*, plaintiff does not cite any law that legislators' media comments are relevant to establishing legislative intent. See *id*. Plaintiff also attacks *Gillette* for allegedly failing to consider that PA 282 solely disadvantages out-of-state taxpayers. *Gillette*, however, did not ignore this argument. Rather, the Court, relying on United States Supreme Court precedent, recognized that any effect on out-of-state taxpayers was not inherent in PA 282 itself, but a consequence of different formulas used by different states. *Gillette*, 312 Mich App at 433-434. Plaintiff does not explain why this reasoning is wrong and its claim in this regard is also abandoned. *Innovation Ventures, LLC*, 499 Mich at 518. Plaintiff has failed to demonstrate that *Gillette*'s Commerce Clause analysis is erroneous.

---

[6] Putting aside plaintiff's failure to develop this argument, we note that plaintiff's position that defendant admitted that PA 282 is facially discriminatory in a motion in *IBM* does not support that the law is facially discriminatory. The State's admission that upholding the Compact " 'may significantly impact the manner in which *out of state businesses* pay taxes to the State[,]' " is not an admission of a facially discriminatory law. This is because this "impact" cannot be gleaned from the face of the law and defendant was apparently referencing a consequence of the Compact's repeal.

-12-

E.  SEPARATION OF POWERS

Plaintiff also argues that PA 282 violates the Separation of Powers Clause of the Michigan Constitution, Const 1963, art 4, § 1.  The Separation of Powers Clause provides: "The powers of government are divided into three branches: legislative, executive and judicial.  No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."  Const 1963, art IV, § 1.  Under this clause,

> the legislative branch makes the laws, the executive branch executes them, and the judicial branch interprets and applies them in cases properly before the courts. *Kyser v Kasson Twp*, 486 Mich 514, 535; 786 NW2d 543 (2010).  More recently, our Supreme Court further explained that "[t]he true meaning [of the doctrine] is that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments; and that such exercise of the whole would subvert the principles of a free Constitution. *Makowski v Governor*, 495 Mich 465, 482; 852 NW2d 61 (2014). [*Okrie v State*, 306 Mich App 445, 454; 857 NW2d 254 (2014).]

Further, it is well-established that " 'the Legislature may not reverse a judicial decision or repeal a final judgment, *Wylie v Grand Rapids City Comm*, 293 Mich 571, 582; 292 NW 668 (1940),' " but it may "amend a law that it believes the judiciary has wrongly interpreted," *Gen Motors Corp*, 290 Mich App at 373 (citation omitted).

In *Gillette*, the Court recognized that the Separation of Powers Clause precluded the Legislature from reversing a judicial decision or "repealing a final judgment," but that the Legislature could "cure the judicial misinterpretation of a statute."  Gillette, 312 Mich App at 426-427.  Because PA 282 did not reverse a judicial decision or repeal a final judgment, the Court held that PA 282 did not violate separation of powers principles. *Id*. at 430.

Once again, plaintiff does not specifically connect its separation of powers arguments to the *Gillette* Court's reasoning and it makes no attempt to explain why it thinks that Court's reasoning is wrong.  It is not incumbent on this Court to develop plaintiff's arguments on appeal and we may deem this argument abandoned. *Innovation Ventures, LLC*, 499 Mich at 518.

Notwithstanding the deficiency of plaintiff's briefing, we note that *Gillette* rejected the very same arguments and authorities that plaintiff relies on and plaintiff does not provide additional reasons why *Gillette*'s reliance on these authorities is wrong.  Plaintiff, for example, asserts that PA 282 violated the separation of powers doctrine by declaring the intent of a prior legislature, relying on the fact that composition of the Legislature that enacted PA 282 in 2014 is different than the 2007 Legislature, citing *Bd of Educ Isle Twp v Presque Isle Co Bd of Educ*, 364 Mich 605, 612; 111 NW2d 853 (1961).  *Gillette* rejected this very same argument and authority.  *Gillette*, 312 Mich App at 428.  Plaintiff also asserts that PA 282 violates the separation of powers principle because it reversed *IBM*.  Again, *Gillette* rejected this argument, stating as follows:

There are several reasons why the Legislature did not violate the Separation of Powers Clause by retroactively repealing the Compact to January 1, 2008, thereby obviating the *IBM* Court's legal conclusions. First, 2014 PA 282 did not reverse a judicial decision or repeal a final judgment. In *IBM,* 496 Mich at 645, 658–659, 662; 852 N.W.2d 865 (opinion by VIVIANO, J.), the lead opinion held that *2007 PA 36* did not implicitly repeal the Compact's election provision. 2014 PA 282 did not overturn that judicial interpretation of the 2007 law. Instead, the Legislature created a new law, not interpreted by the *IBM* Court, that explicitly repealed the Compact provisions effective January 1, 2008, to further what the Legislature understood to have been its original intent when it enacted 2007 PA 36. This did not impinge on the judiciary's role of interpreting the law but instead corrected a mistake that was made clear by the holding in *IBM.* That is, the Legislature in 2014 PA 282 *explicitly* repealed the Compact provisions after the holding in *IBM* revealed that the Compact election provision had not been *implicitly* repealed by the enactment of 2007 PA 36. Although 2014 PA 282 may have rendered moot the effect of the judicial interpretation in *IBM,* this did not overturn that Court's judgment and did not violate the Separation of Powers Clause. [*Id.* at 428.]

Plaintiff's conclusory assertion that PA 282 reversed a judicial decision (*IBM*) is thus a distortion of the well-established rule that *Gillette* relied on because PA 282 did not actually reverse a judicial decision. *Gillette*'s separation of powers analysis is not erroneous.

## F.  LEGISLATIVE PROCESS REQUIREMENTS

Plaintiff raises three constitutional challenges related to the legislative process that resulted in PA 282. Originally introduced in February 2013, SB 156, which led to the repeal of the Compact, did not refer to the Compact, but referenced the repeal or amendment of various provisions of the MBTA pertaining to the calculation of taxpayers' tax bases. The bill lingered in both the Senate and House, being sent to various committees. Then, after the release of *IBM* in July 2014, the House, on September 9, 2014, adopted substitute H-1, which added enacting language that retroactively repealed the Compact. Specifically, the language "to repeal acts and parts of acts" was added to SB 156's enacting language, which was in reference to the Compact's repeal. The Senate concurred with H-1 on September 10th and SB 156 was approved by the Governor on September 11, 2014, taking immediate effect as PA 282.

Plaintiff raises three constitutional challenges to this legislative process under Mich Const 1963, art IV, §§ 24 and 26. The former, known as the Title-Object Clause, provides:

> No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title. [Mich Const 1963, art IV, § 24.]

Three types of challenges may be raised under this clause, only two of which are relevant here: a "title-body" challenge and a "change of purpose" challenge. Plaintiff also raises a challenge under the Five-Day Rule Clause, which states in relevant part:

No bill shall be passed or become a law at any regular session of the legislature until it has been printed or reproduced and in the possession of each house for at least five days. [Mich Const 1963, art IV, § 26.]

## 1. TITLE-BODY CHALLENGE

Plaintiff alleges that PA 282 violates the title-body rule because PA 282 makes no reference to the Compact and the phrase "to repeal acts and parts of acts" is "insufficient as a matter of law." Regarding a title-body challenge, this Court has stated:

> The title of an act must express the general purpose or object of the act. However, the title of an act is not required to serve as an index to all of the provisions of the act. Instead, the test is whether the title gives the Legislature and the public fair notice of the challenged provision. The fair-notice requirement is violated only where the subjects [of the title and body] are so diverse in nature that they have no necessary connection . . . . [*People v Bosca*, 310 Mich App 1, 83; 871 NW2d 307 (2015) (quotation marks and citation omitted)]

The *Gillette* panel applied these rules and directly rejected the arguments plaintiff now raises:

> Again, the title of 2014 PA 282 expresses the general purpose or object of amending the MBT Act and *refers to the repeal of acts or parts of acts. Although the title does not use the word "Compact,"* the title need not be an index of all of the act's provisions. *City of Livonia* [*v Dep't of Social Servs*], 423 Mich [466,] 501[; 378 NW2d 466 (1985)]. The repeal of the Compact is germane, auxiliary, or incidental to the amendment of the MBT Act because the elimination of the Compact's election provision is pertinent to the proper method of apportionment of the MBT tax base. The subjects are not so diverse in nature that they lack a necessary connection, and neither the legislators nor the public were deprived of notice of the challenged provision. See also *Mooahesh* [*v Dep't of Treasury*], 195 Mich App [551,] at 569[; 492 NW2d 246 (1992)] ("Despite [1988 PA 516's] failure to state explicitly in the title that the Lottery Act exemption was being repealed, we are able to declare that the subjects are not so diverse as to have 'no necessary connection.' "). [*Gillette*, 312 Mich App at 444 (emphasis added to indicate analysis rejecting plaintiff's arguments in the instant appeal).]

Plaintiff does not make any argument explaining why this analysis is wrong and merely repeats the same arguments that *Gillette* already considered and rejected. Without any explanation as to why *Gillette* is wrong in this regard, plaintiff has not demonstrated that it is entitled to a conflict panel and has abandoned this claim. *Innovation Ventures, LLC*, 499 Mich at 518. In any case, we agree with *Gillette* that the title of PA 282 gave the public sufficient notice that laws relating to the MBTA would be affected by the new law. It is not necessary that the title of an act specifically mention the Compact's repeal. *Mooahesh*, 195 Mich App at 569.

-15-

## 2. CHANGE OF PURPOSE CHALLENGE

Plaintiff's change-of-purpose challenge asserts that the repeal of the Compact is only tangentially related to SB 156, as that bill as originally drafted merely sought to amend the MBTA. When addressing a change-of-purpose challenge, "[t]he test for determining if an amendment or substitute changes a purpose of the bill is whether the subject matter of the amendment or substitute is germane to the original purpose." *People v Kevorkian*, 447 Mich 436, 461; 527 NW2d 714 (1994) (opinion by CAVANAGH, C.J., AND BRICKLEY AND GRIFFEN, JJ.).

Applying this test, the *Gillette* panel rejected plaintiff's change of purpose challenge:

> With respect to 2014 PA 282, both the original and amended bill contained provisions related to the MBT tax base. The original purpose of SB 156 was to amend the MBT Act in various ways, including by enacting amendments concerning the gross-receipts tax base under the MBT. The change implemented by substitute H-1, as enrolled as 2014 PA 282, *did not introduce an entirely new and different subject matter.* Instead, it amended or extended the basic purpose of the original bill by retaining the original amendments and adding other provisions, including language retroactively repealing the Compact provisions and expressing legislative intent concerning the use of the single-factor apportionment formula and the elimination of the Compact's election provision. *This was germane to the original purpose of amending the MBT Act because, as discussed, the elimination of the Compact's election provision was pertinent to the proper method of apportionment under the MBT Act. Therefore, the repeal of the Compact was sufficiently interconnected with the MBT Act that it fell within the basic purpose of the original bill.* This was a far cry from the introduction of an entirely new and different subject matter, as in *Toth v Callaghan*, 995 F Supp 2d 774, 778 (ED Mich, 2014), where a bill that began by allowing emergency managers to reject, modify, or terminate collective bargaining agreements ended up being passed as a bill that excluded graduate student research assistants from the definition of "public employee." [*Gillette*, 312 Mich App at 445-446 (emphasis added).]

Once again, plaintiff has failed to explain why it thinks *Gillette's* reasoning was wrong and merely repeats arguments that *Gillette* already rejected. Like the taxpayers in *Gillette*, plaintiff has simply characterized SB 156 and H-1 as having two entirely different and unrelated purposes and wishes that the *Gillette* panel had agreed. However, in our view, *Gillette* correctly determined that no change-of-purpose violation occurred: repeal of the Compact is intimately related to the original purpose of SB 156, as each sought to make changes in the way that a taxpayer's tax base is calculated. Plaintiff has not cited any authority that would compel us to reach a different conclusion.

## 3. FIVE-DAY RULE CHALLENGE

Finally, plaintiff says that passage of SB 156 violated the five-day rule because the amended bill did not remain in either house for the required five days. As noted, the five-day rule requires that the bill remain in each house for five days before passage. With respect to the

-16-

five-day challenge, the Court in *Gillette* measured this five-day period from the date that SB 156 was originally before the Legislature, not from the date that the bill was amended by substitute H-1. The Court stated:

> The legislative record establishes that SB 156 was before each house for at least five days. And as discussed earlier, there was no change of the original bill's purpose. Accordingly, no violation of the Five-Day Rule occurred. [*Gillette*, 312 Mich App at 447.]

Certainly, SB 156, as amended by substitute H-1, was not before each house five days before enactment. Substitute H-1 was presented in the house and adopted the same day; the next day, H-1 was approved by the Senate; and, the following day, the Governor signed SB 156 into law, taking immediate effect as PA 282. That the substitute did not remain in each house for five days, however, is immaterial because substitute H-1 was germane to the original purpose of SB 156, the latter of which was introduced in February 2013 and remained in each house well over five days. The five-day rule is not violated if a substitute bill, which was not in each house for five days, is for the same purpose and germane to the original bill that was in each house for the requisite number of days. See *United States Gypsum Co v State Dep't of Revenue*, 363 Mich 548, 553, 556; 110 NW2d 698 (1961). Plaintiff has failed to show that *Gillette* was wrongly decided on this issue.

## G. CONCLUSION

In sum, having reviewed plaintiff's arguments in light of the analysis in *Gillette*, we are of the opinion that *Gillette* correctly determined that the Compact is not a binding contract and that PA 282 did not violate any of the constitutional provisions on which plaintiff relies. Plaintiff makes no cogent arguments why this Court's decision in *Gillette* was wrongly decided to persuade us otherwise. Accordingly, we decline to issue a decision disagreeing with *Gillette*. Plaintiff's challenges related to the retroactive repeal of the Compact were rejected in *Gillette* and we reject them here as well. The Court of Claims did not err by dismissing Counts I and II of plaintiff's complaint in Docket No. 332891.

Affirmed.

/s/ Michael J. Kelly
/s/ Peter D. O'Connell
/s/ Jane M. Beckering

-17-